[No. 6865-6-II.   Division Two.   April 18, 1985.]

ALISON M. SCHOENING, ET AL, *Appellants,* v. GRAYS HARBOR COMMUNITY HOSPITAL, *Respondent.*

*Laurie Kinerk*, for appellants.

*A. Clarke Johnson, Jr.*, and *Todd M. Worswick*, for respondent.

ALEXANDER, J.—Alison and Larry Schoening appeal a summary judgment order dismissing their claim that the Grays Harbor Community Hospital was liable for treatment received by Alison Schoening at that hospital. We reverse and remand for trial.

The Schoenings' first child was born on September 22, 1980, at the Grays Harbor Community Hospital. The child and mother were released from the hospital 2 days later. That night Mrs. Schoening returned to the hospital's emer-

gency room complaining of breast engorgement and perineal tenderness. Unable to reach her physician, Dr. Charles Ward, emergency room personnel summoned Dr. Thomas Wu, who was taking Dr. Ward's calls. Dr. Wu prescribed antibiotics and sent Mrs. Schoening home. In the early morning hours of the next day, September 25, 1980, she returned to the emergency room. She said the pain was worse, and she was feeling faint. Dr. Ward admitted her to the hospital and suggested that surgery might be required. The Schoenings said they would like a second opinion on surgery and, thereafter, Dr. Ward ceased treating her. At the request of Dr. Ward and Mrs. Schoening's family, Dr. Wu then assumed responsibility for the care of Mrs. Schoening. Alison Schoening remained at Grays Harbor Community Hospital for 7 days. During this time Dr. Wu consulted with Dr. Alan Failor, an internal medicine specialist employed at the United States Public Health Service, and the two doctors treated Mrs. Schoening with antibiotics. However, her condition continued to deteriorate, and by October 2, 1980, it was deemed "life threatening." Dr. Wu then consulted specialists at the University of Washington, performed exploratory surgery and transferred Mrs. Schoening to the University of Washington Medical Center. She remained there until October 27, 1980, undergoing a colostomy and other surgery.

This suit was commenced by the Schoenings in September 1981 against the Grays Harbor Community Hospital and the three doctors who treated Mrs. Schoening there. The hospital moved for summary judgment and presented argument. The trial judge filed a memorandum decision in which he indicated the hospital's motion would be granted. The Schoenings moved for reconsideration of that decision and filed an affidavit of Michael J. Miller, M.D., in support of their motion. The court considered Miller's affidavit, but adhered to its earlier decision.[1]

---

[1] The hospital assigns no error to the court's consideration of Dr. Miller's affidavit, but emphasizes the fact that it was not considered until after the court's

The Schoenings argued that the hospital could be liable for the negligent acts of the doctors under theories of respondeat superior and corporate negligence. Recovery under the first theory has been precluded by a settlement with the doctors.[2] If the doctors were agents of the hospital, the hospital was released from liability by their satisfaction of the claim. *Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 658 P.2d 1230 (1983). This point was conceded by plaintiffs at the hearing before this court.

The second theory, that the hospital has independent liability, is not disposed of by the settlement, however. It is based on the proposition that a hospital owes an independent duty of care to its patients. This duty was recognized in *Pedroza v. Bryant,* 101 Wn.2d 226, 677 P.2d 166 (1984), which expressly applied the theory of corporate negligence to hospitals. The court points out in *Pedroza,* 101 Wn.2d at 231 that the doctrine reflects the public's conception of the modern hospital as a multifaceted health care facility "responsible for the quality of medical care and treatment rendered."

Although the trial court did not have the benefit of *Pedroza,* the same reasoning is present in earlier cases. In *Osborn v. Public Hosp. Dist. 1,* 80 Wn.2d 201, 205–06, 492 P.2d 1025 (1972), the court said:

---

original ruling. That point is not significant. The memorandum decision of the trial court was not a final judgment; no order had been entered. *See* CR 54(e); *Department of Labor & Indus. v. Kennewick,* 99 Wn.2d 225, 228, 661 P.2d 133 (1983). The court was therefore free to consider other evidence, even at that late date. It is apparent from the court's order that Dr. Miller's affidavit was considered in ruling on the motion for summary judgment.

[2]The three doctors, Wu, Ward and Koeniger, are associated in the practice of medicine at the Hoquiam Obstetrical and Gynecological Clinic, P.S., and that professional services corporation is a named defendant. The Schoenings subsequently reached a settlement with these doctors. The hospital has moved to dismiss this appeal claiming it is moot because of the settlement. That motion was denied by this court's commissioner and the hospital moved for modification of that ruling. The motion for modification of commissioner's ruling was consolidated with this appeal. See order of March 15, 1985.

We hold there was a responsibility of the hospital attendants to administer to the physical safety of this patient as their reasonable observation of Omer H. Osborn's state of mind and physical condition at that time would reveal, independent of the implied direction from the attending physician as of the day before.

In a similar vein the Supreme Court pointed out in *Teig v. St. John's Hosp.*, 63 Wn.2d 369, 373, 387 P.2d 527 (1963):

"'It is not disputed that all the authorities hold that private hospitals owe to their patients such ordinary care and attention as the mental and physical condition of such patients reasonably requires. . . .

Furthermore, RCW 4.24.290 provides that the applicable standard of care for a hospital is "to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, . . ."

The question then is: Did the hospital violate this standard of care by its failure to intervene in the treatment of Mrs. Schoening? The trial court determined as a matter of law that it had not. That decision was proper only if there is no genuine issue as to any material facts, considering all the facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wendle v. Farrow*, 102 Wn.2d 380, 686 P.2d 480 (1984).

Applying the aforementioned principles to this case, we conclude that a fact question exists concerning whether the Grays Harbor Community Hospital met its duty of care to its patients. Under the cases cited, the hospital clearly has a duty to intervene in the treatment of its patients if there is obvious negligence. According to Dr. Miller's affidavit, that standard of care was not met.[3] He states:

5. Based upon my familiarity with the applicable standards of practice and a review of the records indicated above, I am of the opinion that the required mini-

---

[3]While the statements of the Schoenings' expert, Dr. Miller, may appear somewhat conclusory, an expert witness may give opinion evidence on the ultimate issue. ER 704. Affidavits of qualified experts are sufficient to raise a factual issue as to whether the standard of care has been met. *LeBeuf v. Atkins*, 28 Wn. App. 50, 621 P.2d 787 (1980).

mum medical standards of practice were violated and not maintained by Grays Harbor Community Hospital during the hospitalization and care provided to Alison Schoening. This opinion is based upon the care rendered commencing with the Emergency Room visit on the late evening of September 24, 1980; Ms. Schoening's admittance to the hospital on the early morning of September 25, 1980; and the continuing care provided to her until the transfer to University Hospital, University of Washington, Seattle, WA.

6. The minimum standard of care for hospitals required continued monitoring and observation of the patient by the hospital staff, as well as obtaining an additional or independent evaluation of the patient in those instances where the care being provided by the attending physician is questionable and where the patient's condition continues to deteriorate.

7. The treatment provided by Dr. Thomas Wu from the initial Emergency Room visit on September 24, 1980 until Alison Schoening's transfer to University Hospital on October 2, 1980 also failed to meet the required standard of practice by providing both questionable and inadequate treatment for her infection and, in fact, allowing Ms. Schoening's condition to continue to deteriorate.

8. Under these circumstances, the minimum standard of practice for hospitals require that Grays Harbor Community Hospital act independently of the attending physician in providing medical treatment and care to Alison Schoening.

Hospital personnel were certainly aware of Mrs. Schoening's deteriorating condition. It is not clear, however, whether that deterioration, itself, was enough to indicate that the attending physicians' treatment was such that the hospital should act independently of the attending physician. Dr. Miller apparently feels the hospital should have intervened. Whether they should have or not is a question for the trier of fact. It is not a question resolvable on summary judgment.

The hospital argues that the theory of corporate negligence was not properly raised below. We disagree. While paragraph 1.2 of plaintiffs' amended complaint is not a

vision of precise pleading it seems sufficient to put defendants on notice that plaintiffs are seeking to establish corporate negligence.[4]

■ A claim is adequately pleaded if it contains a short, plain statement showing that the pleader is entitled to relief, and a demand for judgment based thereon. *Christensen v. Swedish Hosp.,* 59 Wn.2d 545, 368 P.2d 897 (1962). It is not necessary for a plaintiff to plead facts "constituting a cause of action." *Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968); *Simpson v. State,* 26 Wn. App. 687, 615 P.2d 1297 (1980). Even if plaintiffs' theory was not made clear in their pleading, it certainly was made clear before argument on defendants' motion for summary judgment. The Schoenings' memorandum to the court discusses at length their view that the determination of independent liability of the defendant hospital was at issue. The issue was properly raised, and must be resolved by the trier of fact. Therefore, we reverse and remand the matter to the Grays Harbor County Superior Court for trial.

REED, A.C.J., and PETRICH, J., concur.

After modification, further reconsideration denied May 29, 1985.

Review denied by Supreme Court August 16, 1985.

---

[4]Paragraph 1.2 states:

"Defendant Grays Harbor Community Hospital is a medical facility doing business in Grays Harbor County, Washington and at all times material hereto was responsible and liable for the services the Defendant doctors provided on the hospital premises under the auspices, employment, or agency of the Hospital and as part of the Hospital enterprise."