[No. 6566–9–III.   Division Three.   December 3, 1985.]

KIRBY D. ALEXANDER, ET AL, *Appellants,* v. BETTY
L. GONSER, ET AL, *Defendants,* YAKIMA VALLEY
MEMORIAL HOSPITAL, *Respondent.*

*William A. Stiles, Jr.,* and *Stiles & Stiles, Inc., P.S.,* for appellants.

*David A. Thorner, Donald E. Templeton,* and *Thorner, Almon, Kennedy & Gano,* for respondent.

THOMPSON, J.—This case involves the issue of whether a hospital has an independent duty to inform a patient of test results administered at the request of the treating physician. We answer in the negative and affirm.

On October 6, 1982, Nancy Alexander, who was at full term pregnancy, was brought to the Yakima Valley Memorial Hospital emergency room following a 2–car collision. Mrs. Alexander was driving at the time of the accident and suffered direct trauma to her abdomen when she struck the steering wheel. Mrs. Alexander's obstetrician, Dr. Figgs,[1] when notified of the accident, instructed the emergency room staff to perform a general examination. When he arrived, he personally gave Mrs. Alexander a gynecological examination in the emergency room. Thereafter, Mrs. Alexander was transferred to another area of the hospital for fetal heart monitoring.

The nurse who was monitoring the fetal heart tones

---

[1]Although consulted by Mrs. Alexander as her private physician, Dr. Figgs also had hospital privileges at Yakima Valley Memorial Hospital.

called Dr. Figgs at his home to inform him the results were "equivocal" and that Mrs. Alexander continued to complain of numbness to her abdomen. Dr. Figgs instructed the nurse to send Mrs. Alexander home; however, after the nurse voiced her concern with the test results, Dr. Figgs agreed to have Mrs. Alexander return the following morning for additional monitoring. Mrs. Alexander and her husband were not informed of the "equivocal" results.

The following morning when Mrs. Alexander returned to the hospital, stress tests indicated fetal distress, and a Cesarean section was performed. A male infant was delivered suffering from asphyxia. The child has been diagnosed as permanently brain damaged.

Mrs. Alexander, as guardian ad litem for her child, and on her own behalf, brought suit against the hospital for negligence. The hospital moved for summary judgment which was partially granted May 25, 1984, on the issues of respondeat superior, failure of the hospital to inform Mrs. Alexander of the "equivocal" test results, and the alleged delay in monitoring. On June 8, 1984, the court granted summary judgment for the hospital on the remaining issues of corporate negligence and the alleged inaccurate medical history. Mrs. Alexander appeals the issues of informed consent, corporate negligence, and the inaccurate medical history.[2]

█ Summary judgment should be ordered only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Herskovits v. Group Health Coop.*, 99 Wn.2d 609, 613, 664 P.2d 474 (1983). The hospital, as the moving party, has the initial burden of proof and once it proves by uncontroverted facts that no genuine issue of material fact exists, the burden shifts to the nonmoving party to set

---

[2]Although Mrs. Alexander raised the issue of the accuracy of the medical history taken by emergency room staff, she did not develop this issue in her brief. A reviewing court will not consider an issue in the absence of argument and citation of authority. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 29, 593 P.2d 156 (1979).

forth specific facts showing that there is a genuine issue for trial. *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 201, 633 P.2d 122 (1981), *review denied,* 96 Wn.2d 1025 (1982). Both parties may rely on pleadings, depositions, answers to interrogatories, affidavits and admissions on file, *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 22, 586 P.2d 860 (1978), but the reviewing court is limited to issues and materials considered by the trial court. *Harris v. Kuhn,* 80 Wn.2d 630, 497 P.2d 164 (1972); RAP 9.12. Consequently, although Mrs. Alexander refers in argument to a variety of materials, we have restricted our inquiry to only those items enumerated in the trial judge's "certificate of evidence considered".

Mrs. Alexander claims, under RCW 7.70.050, the informed consent statute, the hospital had a duty to inform her of the "equivocal" nature of the fetal monitoring results. Mrs. Alexander further claims this is a factual issue which precludes summary judgment. We disagree.

Informed consent focuses on the patient's right to know his or her body's condition and to decide what should be done about it. *Keogan v. Holy Family Hosp.,* 95 Wn.2d 306, 314, 622 P.2d 1246 (1980). Whenever a physician becomes aware of an abnormality which may indicate risk or danger in the patient's body, he has a duty to disclose. *Keogan,* at 314; *Gates v. Jensen,* 92 Wn.2d 246, 251, 595 P.2d 919 (1979); *Miller v. Kennedy,* 11 Wn. App. 272, 282, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975).

This duty to disclose has been codified in RCW 7.70. To find a health care provider liable for a violation of RCW 7.70.050, the plaintiff must prove: (1) the health care provider failed to inform the patient of a material fact relating to treatment; (2) the patient consented to treatment without being aware of that fact; (3) a reasonably prudent patient under similar circumstances would not have consented given such information; and (4) the treatment in question proximately caused injury to the patient. *Bertsch v. Brewer,* 97 Wn.2d 83, 90, 640 P.2d 711 (1982). Hospitals are included within the definition of health care providers,

RCW 7.70.020;[3] moreover, treatment has been defined to encompass all aspects of patient care, including the doctor's resolve to do nothing about a patient's perceived medical abnormalities. *Keogan,* at 319. "Although the doctrine's skeletal elements have been enacted into statute, it remains the task of developing case law to flesh out the rights, duties, powers, and liabilities imposed by the informed consent legal relationship." (Footnotes omitted.) Comment, *Informed Consent in Washington: Expanded Scope of Material Facts That the Physician Must Disclose to His Patient,* 55 Wash. L. Rev. 655, 655–56 (1980).

▮ Mrs. Alexander interprets RCW 7.70 as imposing upon the hospital the same informed consent duties the statutes and case law impose upon Dr. Figgs. She contends that the hospital comes within the RCW 7.70.020 definition of a health care provider and since the hospital, through its employee, had become aware of a possible patient abnormality, it had a duty to relate this information to Mrs. Alexander. We disagree. Although the hospital did the monitoring and observed equivocal results, it did so at the direction of Mrs. Alexander's personal physician. The results and concerns were relayed to Dr. Figgs and the medical decision as to the significance of the test was his to make.

The fact the hospital comes within the definition of health care provider alone does not warrant the conclusion that every entity and every individual that falls within the definition has equal informed consent obligations. The logic of this conclusion is illustrated by a number of cases from other jurisdictions.

[3]RCW 7.70.020:

"Definitions. As used in this chapter 'health care provider' means either:

". . .

"(3) An entity, whether or not incorporated, facility, or institution employing one or more persons described in part (1) above, including, but not limited to, a hospital, clinic, health maintenance organization, or nursing home; or an officer, director, employee, or agent thereof acting in the course and scope of his employment, including in the event such officer, director, employee, or agent is deceased, his estate or personal representative."

[T]he relationship between the physician and his patient "is always one of great delicacy. And it is perhaps the most delicate matter, often with fluctuating indications, from time to time with the same patient, whether a physician should advise the patient (or his family), more or less, about a proposed procedure, the gruesome details, and the available alternatives. Such a decision is particularly one calling for the exercise of medical judgment. * * * In the exercise of that discretion, involving as it does grave risks to the patient, a third party should not ordinarily meddle" (*Fiorentino v Wenger,* 19 NY2d 407, 415–416)[, 227 N.E.2d 296, 280 N.Y.S.2d 373 (1967)].

. . . Any other rule is inherently impossible under the circumstances.

*Prooth v. Wallsh,* 105 Misc. 2d 603, 606, 432 N.Y.S.2d 663, 665 (N.Y. Sup. Ct. 1980). Any duty to inform Mrs. Alexander of the test results would have been that of her privately retained physician, not the hospital or its personnel. *Cross v. Trapp,* 294 S.E.2d 446 (W. Va. 1982); *Cox v. Haworth,* 54 N.C. App. 328, 283 S.E.2d 392 (1981).[4] To hold a hospital or its employees have a duty to intervene in the independent physician/patient relationship, unless the hospital is aware of circumstances more extraordinary than those in the record before this court, would be far more disruptive than beneficial to a patient. This is not a case wherein it is alleged the hospital is liable on the issue of informed consent because of vicarious liability for the failure of an employee physician to obtain consent. *Cooper v. Curry,* 92 N.M. 417, 589 P.2d 201, 204 (1978); *see also Keogan,* at 309 n.1. Here the court granted summary judgment in favor of the hospital on the issue of respondeat superior. Mrs. Alexander has not appealed that ruling. We conclude summary judgment was proper on this issue.

Next, Mrs. Alexander claims there is an issue of material fact regarding hospital liability for corporate negligence in

---

[4]Although not at issue in *Cox v. Haworth, supra,* North Carolina also has an informed consent statute which includes hospitals in its definition of "Health Care Providers". N.C. Gen. Stat. § 90–21.11 (Supp. 1983). *See also* N.Y. Pub. Health Law § 2805–d (McKinney 1985).

the hiring and supervision of Dr. Figgs which precludes summary judgment. We disagree.

Corporate negligence was recently adopted in Washington. *Pedroza v. Bryant,* 101 Wn.2d 226, 677 P.2d 166 (1984); *Byerly v. Madsen,* 41 Wn. App. 495, 503, 704 P.2d 1236, *review denied,* 104 Wn.2d 1021 (1985). The doctrine is based on a nondelegable duty the hospital owes directly to the patient, and requires hospitals to exercise reasonable care to ensure that only competent physicians are selected as members of the hospital staff. Comment, *The Hospital–Physician Relationship: Hospital Responsibility for Malpractice of Physicians,* 50 Wash. L. Rev. 385 (1975). The standard of care is generally defined by the accreditation standards of the Joint Commission on Accreditation of Hospitals (JCAH), and the hospital's own bylaws. *Pedroza,* at 233–34.

Corporate negligence has been extended to include placing a duty on the hospital to "intervene in the treatment of its patients if there is obvious negligence". *Schoening v. Grays Harbor Comm'ty Hosp.,* 40 Wn. App. 331, 335, 698 P.2d 593, *review denied,* 104 Wn.2d 1008 (1985). This is in accord with other jurisdictions which find the hospital liable when its employees fail to recognize and report abnormalities in the treatment and condition of patients. *See Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc. v. Catron,* 435 N.E.2d 305 (Ind. Ct. App. 1982); *Fridena v. Evans,* 127 Ariz. 516, 622 P.2d 463, 12 A.L.R.4th 46 (1980); *Utter v. United Hosp. Ctr., Inc.,* 160 W. Va. 703, 236 S.E.2d 213 (1977); *Toth v. Community Hosp.,* 22 N.Y.2d 255, 239 N.E.2d 368, 292 N.Y.S.2d 440 (1968); Annot., *Hospital's Liability for Negligence in Failing To Review or Supervise Treatment Given by Doctor, or To Require Consultation,* 12 A.L.R.4th 57 (1982).

To prevail in an action for professional negligence against a hospital, the plaintiff must

prove by a preponderance of the evidence that the defendant . . . failed to exercise that degree of skill, care, and learning possessed at that time by other persons in

the same profession, and that as a proximate result of such failure the plaintiff suffered damages . . .

RCW 4.24.290; *Byerly,* at 503. In resisting a motion for summary judgment, Mrs. Alexander had a duty to present some evidence that negligence on the part of the hospital in monitoring Dr. Figgs proximately caused her injuries. Washington recognizes proximate cause as a composition of two elements: cause in fact and legal causation. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). "As a determination of what actually occurred, cause in fact is generally left to the jury. . . . [Q]uestions of fact are not appropriately determined on summary judgment unless but one reasonable conclusion is possible." *Hartley,* at 778.

Proximate cause must be established by evidence which rises above speculation, conjecture, or mere possibility. *Young v. Group Health Coop.,* 85 Wn.2d 332, 340, 534 P.2d 1349 (1975); *Nejin v. Seattle,* 40 Wn. App. 414, 421, 698 P.2d 615 (1985). At the hearing on the motion, the trial court determined Mrs. Alexander had established by her expert, Dr. Jones, that the hospital failed to adequately monitor Dr. Figgs. However, the court also concluded "Dr. Jones [did not] find any proximate cause between the failure to monitor, supervise or direct and the clinical situation that occurred on October 6". This determination was apparently due to the "speculative nature" of Dr. Jones' affidavit, in which he stated "unacceptable practice patterns might have been disclosed which would have warranted closer supervision and safeguards, the net result of which might have prevented the hospital and the physician from providing sub-standard care to Nancy Alexander". Dr. Jones, who specialized in psychology rather than obstetrics, also stated he was not knowledgeable as to the standard of care for obstetricians in Washington. Additional evidence on this issue was before the court. In deposition two of Mrs. Alexander's expert witnesses, Drs. Parer and Lenihan, stated the hospital and its employees, including the nurse who administered the test, complied with the accepted standard of care in treating Mrs. Alexander.

Finally, although the hospital may not have completely satisfied JCAH standards, Dr. Figgs' hospital privileges did not become reviewable until after Mrs. Alexander's treatment.

Mrs. Alexander relies on *Byerly* and *Schoening* to support her position. Both are distinguishable because in those cases the plaintiff had presented some evidence of substandard care in the hospital's patient treatment. Because such evidence was lacking here, we hold no factual issue was raised to preclude summary judgment.

Affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied January 23, 1986.

Review denied by Supreme Court March 21, 1986.