[No. 23088-3-I. Division One. March 5, 1990.]

DEBORAH DOUGLAS, *Respondent*, v. MARK A. FREEMAN, *Defendant*, SISTERS OF PROVIDENCE IN WASHINGTON, *Appellant*.

184

*Mary H. Spillane, Rebekah R. Ross,* and *Williams, Kastner & Gibbs,* for appellant.

*Thomas C. McKinnon, Riddell, Williams, Bullitt & Walkinshaw,* and *Theodore D. Silva,* for respondent.

DEIERLEIN, J.*—Appellant Sisters of Providence in Washington (Providence) appeals, among other things, the trial court's order denying its motion for a judgment notwithstanding the verdict. We reverse.

## I

On April 27, 1981, Deborah Douglas went to Providence Dental Clinic, complaining of irritation in her lower left wisdom tooth. Dr. Candice McMullan, the director of Providence Dental Clinic and a University of Washington faculty member, examined Douglas and took x–rays of her wisdom teeth. Dr. McMullan recommended that all three of Douglas' wisdom teeth be extracted.

Douglas returned to Providence Dental Clinic on April 29, 1981. A dental assistant escorted Douglas into a room, inquired whether she had taken the prescribed medications,

---

*Judge Walter J. Deierlein, Jr., is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

placed a bib on her, and put some dental instruments on a tray. Douglas never saw the dental assistant again.

Dr. Mark A. Freeman then entered the room and informed Douglas that he was going to extract her wisdom teeth. Douglas had never met or seen Dr. Freeman. Dr. Freeman administered anesthesia and placed an apparatus in Douglas' mouth.

Douglas testified that as the procedure progressed, Dr. Freeman seemed nervous; he began perspiring and said something under his breath which was not addressed to her. Douglas testified that she saw no one assist or supervise Dr. Freeman during the extractions. Dr. Freeman could not specifically recall extracting Douglas' wisdom teeth. However, he testified that he had never extracted wisdom teeth without the presence of an assistant, explaining that the assistant must hold the tissue away from the tooth and suction blood and saliva from the mouth so that the dentist has visibility and a free hand to extract the tooth.

Unbeknownst to Douglas, Dr. Freeman was not licensed to practice dentistry in the state of Washington, although he had graduated first in his class from dental school, received his doctorate in dental sciences, and passed the dental board examination for the northeastern region of the United States. At the time, Dr. Freeman was a resident of the University of Washington dental residency program which accepted exceptional dental graduates for further training. The residency program was accepted and approved by the Washington State Board of Dental Examiners and the American Dental Association. During the 12–month program, dental residents rotated to various dental clinics, including Providence.

After Dr. Freeman extracted Douglas' teeth, he noted in her chart that the procedure was without complications. Douglas then returned home. The following morning, after the anesthesia had worn off, Douglas felt her tongue was numb and could not open her mouth. She returned to the clinic. In examining her, Dr. Freeman observed that her tongue was numb on the right side and prescribed pain

medication. Dr. Freeman noted in Douglas' chart that the numbness could be attributable to swelling and therefore might resolve in a few days. Dr. Freeman also noted that the numbness could be the result of "direct trauma to the lingual nerve" and that he would follow up.

Douglas returned to Providence Dental Clinic several times after the extractions and was examined by Dr. Freeman and Dr. Myall, a neurologist. Finally, it was concluded that Douglas' lingual nerve was damaged during the extraction of her wisdom teeth, affecting her ability to taste and feel on the right side of her tongue.

In 1984, Douglas sued Dr. Freeman and Providence for damages arising from the injury to her lingual nerve. Douglas sought recovery on theories of negligence, failure to obtain informed consent, corporate negligence, and violation of the Consumer Protection Act.

The case was tried before a jury in 1988. At trial, Douglas testified as well as a number of witnesses, including Dr. Freeman and several experts. Dr. Harmon Adams, a dentist, testified that upon examination of Douglas' mouth, he determined that damage to her lingual nerve probably occurred when Dr. Freeman made an incision toward the lingual rather than the buccal (cheek) side of the wisdom tooth.

Dr. William Conrow, a dentist and attorney, testified that the cause of Douglas' injury was:

> Damage to the lingual nerve by a surgical instrument during the removal of her wisdom tooth, . . . [caused by] either a scalpel, an elevator in retracting the tissue, or probably, most likely the drill.

Dr. Conrow testified that the damage to the nerve is probably permanent.

After Douglas presented her case in chief, the defendants unsuccessfully moved for a directed verdict on the corporate negligence, Consumer Protection Act and informed consent claims.

Dr. Freeman and Providence then presented their defense. A number of witnesses testified, including two

experts who testified that Dr. Freeman probably damaged Douglas' lingual nerve sometime during the extraction procedure. However, both experts testified that in their opinion Dr. Freeman met the standard of care in extracting Douglas' wisdom teeth. Dr. Philip Worthington explained that injury to the lingual nerve can occur during a wisdom tooth extraction in the absence of negligence.

The defendants objected to the trial court's instructions on corporate negligence and negligence per se on the ground that there was no evidence supporting those claims. The defendants also excepted to the trial court's refusal to give their proposed instructions on the issue of whether Dr. Freeman was exempt from the licensure requirements.

The jury returned separate verdicts for Dr. Freeman on the negligence claim, for Dr. Freeman and Providence on the informed consent and Consumer Protection Act claims, and against Providence on the corporate negligence claim, awarding Douglas $250,000 in damages. The trial court entered judgments on the verdict.

Providence filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial which the trial court denied. Providence appealed.

## II

Providence contends that the trial court erred in denying its motion for judgment notwithstanding the verdict.[1] Providence argues that there was insufficient evidence to support the jury's verdict on the corporate negligence claim and, therefore, the trial court should have entered a judgment in its favor.

---

[1]Although Providence assigns error to the trial court's denial of its motion for judgment notwithstanding the verdict or a *new trial,* its brief does not provide any argument supported by authority that the trial court should have ordered a new trial. Thus, our analysis of this assignment of error is confined to Providence's contention that the trial court should have entered a judgment in its favor notwithstanding the verdict. *See BC Tire Corp. v. GTE Directories Corp.,* 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied,* 108 Wn.2d 1013 (1987).

■ In ruling on a motion for judgment notwithstanding the verdict, the trial court exercises no discretion. *Thompson v. Grays Harbor Comm'ty Hosp.,* 36 Wn. App. 300, 302, 675 P.2d 239 (1983). The trial court "must accept the truth of the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced." *Lockwood v. AC&S, Inc.,* 109 Wn.2d 235, 243, 744 P.2d 605 (1987). The court may grant the motion only if, as a matter of law, "there is no competent evidence or reasonable inference which would sustain a verdict in favor of the nonmoving party." *Lockwood,* 109 Wn.2d at 243.

If there is substantial evidence upon which reasonable minds might justifiably reach conclusions consistent with the verdict, then the question is for the jury. *Lockwood,* 109 Wn.2d at 243. However, there must be substantial evidence, as opposed to a mere scintilla, to support the verdict because a verdict cannot be founded on "mere theory or speculation." *Belli v. Shaw,* 98 Wn.2d 569, 574, 657 P.2d 315 (1983); *accord, Thompson,* 36 Wn. App. at 302–03.

In determining whether the trial court erred in denying Providence's motion for judgment notwithstanding the verdict, we must determine whether the evidence supported the jury's verdict holding Providence liable under the theory of corporate negligence. Under the doctrine of corporate negligence, a hospital owes a nondelegable duty directly to the patient to "exercise reasonable care to ensure that only competent physicians are selected as members of the hospital staff." *Alexander v. Gonser,* 42 Wn. App. 234, 240, 711 P.2d 347 (1985), *review denied,* 105 Wn.2d 1017 (1986); *see also Pedroza v. Bryant,* 101 Wn.2d 226, 233, 677 P.2d 166 (1984). In addition, the hospital owes a duty to "'intervene in the treatment of its patients if there is obvious negligence'." *Alexander,* 42 Wn. App. at 240 (quoting *Schoening v. Grays Harbor Comm'ty Hosp.,* 40 Wn. App. 331, 335, 698 P.2d 593, *review denied,* 104 Wn.2d 1008 (1985)).

Here, the jury returned a separate verdict in favor of Dr. Freeman on Douglas' negligence claim. Although Douglas

does not appeal this verdict, she contends that the exoneration of Dr. Freeman does not defeat her corporate negligence claim against Providence.

It is legally possible that the jury could have found Dr. Freeman was negligent in extracting Douglas' wisdom teeth, but because it believed his negligence did not proximately cause her injuries, rendered a verdict in his favor. However, in order to sustain the jury's verdict holding Providence liable for Douglas' injury, there must be substantial evidence that Providence breached its duty of dure care by acting or failing to act and thereby proximately caused Douglas' injury. *See Alexander,* 42 Wn. App. at 240–41; compare *Thompson,* 36 Wn. App. at 306–07 (jury's verdict exonerating named defendants from liability but holding hospital liable for negligence upheld where there was substantial evidence that other unidentified nurses and hospital staff caused the injury).

The trial record reveals substantial evidence supporting a finding that Providence was negligent. Dr. Freeman testified that the presence and assistance of a dental assistant was absolutely necessary in order to perform a wisdom tooth extraction. Douglas' testimony that she saw no assistant during the extractions was essentially uncontroverted since Dr. Freeman had no independent recollection of the procedure.

Further, RCW 18.32.030(3) provides that unlicensed dentists must be supervised by licensed dentists while they practice dentistry. Although the statute does not necessarily require over–the–shoulder supervision, there was evidence which would support a finding that Dr. Freeman performed the extractions without supervision. Finally, the jury could have concluded that Providence was negligent in permitting an unlicensed dentist to perform extractions in its clinic because there was evidence which would support a finding that residents practicing at Providence's clinic were not exempt from the licensing statute.

■ Despite this evidence of negligence, however, the record is devoid of any testimony establishing that Providence's negligence proximately caused Douglas' injury. As Douglas concedes, all the expert witnesses agreed that the damage to the lingual nerve was actually caused by Dr. Freeman when he extracted Douglas' wisdom teeth.

Douglas attempts to rectify this evidentiary deficit by arguing that the jury was entitled to decide whether Providence should be liable simply because the evidence demonstrated that Dr. Freeman caused Douglas' injury. In support of this argument, she cites *Harbeson v. Parke–Davis, Inc.*, 98 Wn.2d 460, 656 P.2d 483 (1983).

*Harbeson* is distinguishable, however. There, the court recognized a tort action for wrongful birth. The court held that if cause in fact is established, *i.e.*, but for the breach of duty, the injury would not have occurred, then the proximate cause element is satisfied. *Harbeson*, 98 Wn.2d at 476. The *Harbeson* holding essentially disposed of the public policy question of whether legal liability should attach for wrongful birth. *Harbeson*, 98 Wn.2d at 475–76. The *Harbeson* plaintiffs clearly established that but for the defendant's negligence in prescribing anticonvulsant medication to the mother, her babies would not have been born with physical and developmental defects.

In contrast, Douglas established cause in fact only with respect to *Dr. Freeman*'s alleged negligence.[2] None of Douglas' witnesses testified that the alleged negligence of *Providence* caused Douglas' injury. However, Douglas argues that she did not have to establish cause in fact by expert testimony because the issue was properly left for resolution by the jury.

---

[2]Below, Douglas focused her entire proof of causation on the theory that Dr. Freeman's conduct caused her injury. In closing, plaintiff's counsel argued that the presence of a dental assistant was "not a big issue" in the case and that Dr. Freeman's unlicensed status went to the Consumer Protection Act and informed consent claims. The alleged failure of Dr. McMullan to supervise Dr. Freeman was not argued to the jury.

Generally, expert medical testimony on the issue of proximate cause is required. *McLaughlin v. Cook,* 112 Wn.2d 829, 837, 774 P.2d 1171 (1989). However, a plaintiff in a malpractice action need not show causation by direct and positive evidence but only a "chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable." *Adams v. Richland Clinic, Inc., P.S.,* 37 Wn. App. 650, 661, 681 P.2d 1305 (1984) (quoting *Teig v. St. John's Hosp.,* 63 Wn.2d 369, 381, 387 P.2d 527 (1963)). Nevertheless, evidence of causation is insufficient to support a jury verdict "if it can be said that, considering all the medical testimony presented at trial, the jury must resort to speculation or conjecture in determining the causal relationship" between the alleged negligence and the injury. *McLaughlin,* 112 Wn.2d at 837.

Here, Douglas can point to no chain of circumstances from which the jury could have reasonably inferred that Providence's negligent conduct caused her injury. Not one expert testified how Providence could have prevented the injury. The evidence does not establish that the *absence* of a dental assistant, a supervising dentist, or a licensed dentist caused Douglas' injury. It is undisputed that all the expert witnesses agreed that it was Dr. Freeman who actually caused the injury. Thus, there is no evidence that Providence's negligent conduct even contributed to the cause of Douglas' injury.

Although we are loath to overturn a jury's verdict, we are constrained to hold that the record here is inadequate to support the jury's verdict in favor of Douglas on her corporate negligence claim. Any theory of causation which attributes Providence's negligence to be the cause of Douglas' injury is entirely speculative. Accordingly, the trial court erred in denying Providence's motion for a judgment notwithstanding the verdict.[3]

---

[3]Providence also assigns error to the trial court's denial of its motion in limine to exclude certain evidence and its motion for a directed verdict on the plaintiff's corporate negligence claim. In addition, Providence contends the trial court erred

Reversed.

SCHOLFIELD and WEBSTER, JJ., concur.

Reconsideration denied May 3, 1990.

Review granted at 115 Wn.2d 1007 (1990).

in giving instructions on corporate negligence and negligence per se and in failing to give Providence's proposed instructions regarding the statutory exemption for licensure of dental residents. Because we reverse the trial court's denial of Providence's motion for a judgment notwithstanding the verdict, we do not reach Providence's additional assignments of error.