FILED
9/30/2024
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRED PRITCHARD,<br><br>　　　　　　Appellant,<br><br>　　　v.<br><br>PEACEHEALTH ST. JOSEPH<br>HOSPITAL,<br><br>　　　　　　Respondent. | No. 86036-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Fred Pritchard appeals the summary judgment dismissal of his medical negligence claim against PeaceHealth St. Joseph Hospital based on injuries he asserts were caused by administration of an improper dose of his prescribed medication. Pritchard fails to provide competent expert testimony necessary to establish the applicable standard of care or any violation thereof and, as such, fails to establish a prima facie case under RCW 7.70.040. Because the evidence before the trial court was insufficient to create a genuine issue of material fact on his claim of medical negligence, the trial court did not err when it granted the hospital's motion for summary judgment.

FACTS

On June 27, 2022, Fred Pritchard filed a complaint against PeaceHealth St. Joseph Hospital (St. Joseph) and alleged that, shortly after undergoing surgery for a coronary artery bypass graft (CABG) at the hospital on July 8, 2020, he "received

a subcutaneous injection containing ten times the prescribed dose of Victoza."[1] Pritchard further asserted that as "a direct result of the negligence," he had to undergo emergency surgery the day after the CABG to "have fluid and air removed from around his lungs . . . caused by the overdose of Victoza" and that, "as a result of the negligent overdose, [he] has suffered additional general and specific damages as will be proven at trial." No additional factual circumstances were provided in the complaint. Roughly 14 months later, St. Joseph moved to dismiss Pritchard's suit for want of prosecution under CR 41 or, in the alternative, on summary judgment. St. Joseph asserted that it had served discovery requests on Pritchard, but that he had failed to respond or otherwise offer any support for his claims.

St. Joseph attached as exhibits to the motion, among other documents, a copy of its interrogatories, requests for production, and proof of service on Pritchard's counsel, all dated August 30, 2022, as well as a letter and a number of e-mails between the attorneys regarding Pritchard's delinquent discovery responses. Counsel for St. Joseph sent a letter to Pritchard's attorney on December 29, 2022 noting the date of service of its discovery demands and the lack of response, and providing a deadline for his answer. The hospital's attorney also indicated that failure to produce "full and complete responses" by that deadline would result in an attempt to confer by phone under CR 26(i). The e-mails St. Joseph attached as exhibits in support of its motion suggest that the telephonic discovery conference occurred on January 5, 2023 and that the parties agreed that

---

[1] Victoza is a brand of liraglutide, a medicine used to treat type 2 diabetes.

Pritchard would provide discovery responses by January 19, 2023. Other e-mails indicate that Pritchard sent his first set of interrogatories and requests for production to St. Joseph electronically on July 17, 2023 and that counsel for the hospital responded roughly an hour later to advise that the defense had still not received any response from Pritchard to its September 2022 discovery request. Pritchard's counsel replied a few moments later and stated "we'll do our very best to get them to you by July 24th." St. Joseph asserted that, as of the date of filing its motion to dismiss in August 2023, it had still not received any discovery responses from Pritchard.

On September 11, 2023, Pritchard filed a brief in opposition to St. Joseph's motion to dismiss that summarized the assertions set out in his complaint, but did not address the lack of response to the hospital's discovery requests. Pritchard and his wife provided declarations that were attached to the brief opposing dismissal. Pritchard and his wife both described purported admissions of various St. Joseph providers linking a second surgery Pritchard underwent days after the CABG procedure to the overdose of Victoza. Pritchard specifically said that he had been diagnosed with a "non-union" in his chest "where they entered to work on [his] heart," but does not indicate if this "work on [his] heart" occurred during the CABG procedure or a subsequent surgery to remove air or fluid. Pritchard did not submit deposition testimony or declarations from any St. Joseph providers or medical records related to the care underlying the complaint.

Pritchard did, however provide a declaration from pharmacist Matthew Wanat. Wanat's declaration references his curriculum vitae (CV) as attached[2] and asserts "expertise in pharmacotherapy prescribing and monitoring, including adverse drug reactions and toxicities from overdose, including medications such as liraglutide (Victoza)." Wanat stated that he "reviewed records documenting that Fred Pritchard was given a significant overdose of Victoza (10x prescribed dose) while a patient at . . . PeaceHealth in July of 2020" and that the "records [he] reviewed document that Mr. Pritchard's doctors acknowledged him receiving the toxic dose of Victoza at the time, and openly discussed it with him," however he never indicates what those records were. The declaration is silent on Wanat's familiarity with the standard of care for prescribing or administering medications in Washington, for cardiac surgeons or nurses, or for hospitals generally, and does not assert that St. Joseph violated any standard of care or that such a violation caused the damages underlying Pritchard's complaint.

A week later, St. Joseph filed its reply in support of its motion to dismiss and argued that Pritchard failed to meet his burden on summary judgment as Wanat was not qualified to provide an expert opinion on the relevant standard of care or causation. The trial court entered an order on September 28, 2023 that granted St. Joseph's motion to dismiss on summary judgment and included a handwritten explanation of the basis for its ruling that expressly noted that Pritchard "cannot rely on mere allegations in complaint nor lay opinion regarding standard of care and causation. Additionally, neither admissions nor pharmacist testimony are

---

[2] There is no CV attached to the declaration that was transmitted to this court, nor does it appear elsewhere in the record designated on appeal.

sufficient evidence of standard of care." Pritchard filed a motion for reconsideration on October 6, challenging the trial court's determination as to the standard of proof in a medical negligence case. St. Joseph filed a written response opposing the motion for reconsideration that asserted Pritchard had failed to meet the standard for reconsideration under the civil rules. The trial court denied Pritchard's motion for reconsideration.[3]

Pritchard timely appealed.

ANALYSIS

Pritchard assigns error to the trial court's grant of summary judgment in favor of St. Joseph.[4] We review orders on motions for summary judgment de novo and will consider all the evidence "in the light most favor to the nonmoving party." *Davies v MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022); *see also Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Any reasonable inferences will also be viewed "in the light most favorable to the nonmoving party." *Kim v Lakeside Adult Fam. Home,* 185 Wn.2d 532, 547, 374 P.3d 121 (2016). "'Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Berger v Sonneland* 144 Wn.2d 91, 102, 26 P.3d 257 (2001) (quoting *Folsom v.*

---

[3] The order denying reconsideration notes that the trial court considered Pritchard's motion, the response from St. Joseph, and Pritchard's reply in support of his motion in reaching its ruling. However, the reply in support of reconsideration was not transmitted to this court as part of the record designated on appeal.

[4] While Pritchard also transmitted for appeal the order denying reconsideration, he presents no assignment of error or analysis on that order. Accordingly, we need not consider the propriety of that ruling by the trial court.

*Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)); *see also* CR 56(c).  Any fact upon which the outcome of the litigation hinges is a material fact.  *TracFone, Inc. v. City of Renton*, __ Wn. App. 2d __, 547 P.3d 902, 906 (2024).  In reviewing a summary judgment, we "may affirm on any basis supported by the record." *Redding v. Virginia Mason Medical Center*, 75 Wn. App. 424, 426, 878 P. 2d 483 (1994).

"A defendant moving for summary judgment on the issue of negligence has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent evidence to support an essential element of [their] case." *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001).  When a defendant seeks summary judgment on a claim of medical malpractice they can meet their "initial burden" with a showing that "the plaintiff lacks competent expert testimony to sustain a prima facie case of medical malpractice."  *Chervilova v. Overlake Obstetricians & Gynecologists, PC*, 30 Wn. App. 2d 120, 125, 543 P.3d 904 (2024). After this showing, the burden shifts to the plaintiff, who must then provide "'an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action.'"  *Behr v. Anderson*, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021) (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993), *review denied*, 198 Wn.2d 1040 (2022).  When a plaintiff does not make a sufficient showing to demonstrate "'the existence of an element essential'" to their case and they have the burden of proof to do so at trial, it is appropriate to grant summary judgment.  *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d

182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

On appeal, Pritchard asserts his evidence of both negligence and causation was "sufficient to survive summary judgment," and emphasizes that the testimony he put forward was uncontradicted. However, he fails to substantively acknowledge the deficiencies identified by the trial court as to the requirements for expert testimony regarding standard of care and causation. In his reply, he contends the trial court "made no determination that [Pritchard]'s expert Wanat was 'unqualified' to express the opinions in his [d]eclaration," but then proceeds to note that the trial court "simply and specifically held that '[n]either admissions nor pharmacist testimony are sufficient evidence of standard of care.'" This language Pritchard quotes from the order on summary judgment is in fact the court's determination that Wanat's declaration did not provide sufficient evidence establishing the standard of care for cardiothoracic surgery or post-surgical hospital care. Wanat did not describe any applicable standard of care.

Our state has statutory requirements for plaintiffs bringing a claim that a medical professional or facility engaged in medical negligence. *See* RCW 7.70.040. When pursuing such a claim, a plaintiff is required to show that their injury was the result of "the failure of the healthcare provider to follow the accepted standard of care." RCW 7.70.040(1). This preliminary showing necessarily includes both evidence that demonstrates that the failure of the health care provider "to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to

which [they] belong[], in the state of Washington, acting in the same or similar circumstances," *and* that this failure was the proximate cause of the plaintiff's injury that forms the basis for the complaint. *Id.*

An expansive body of case law establishes the particular evidentiary requirements for summary judgment in the context of a medical negligence case. By its own description, our state's highest court has "repeatedly held that 'expert testimony will generally be necessary to establish the standard of care.'" *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017) (internal quotation marks omitted) (quoting *Young*, 112 Wn.2d at 228). Further, this division has explained that, because "expert testimony is generally required to establish the standard of care and to prove causation," "a defendant moving for summary judgment can meet its initial burden by showing that the plaintiff lacks competent expert testimony." *Guile*, 70 Wn. App. at 25.

St. Joseph moved for summary judgment based on the lack of evidence supporting Pritchard's claim for medical negligence and highlighted the absence of expert testimony on the proper standard of care and proximate cause of his asserted injuries. Under well-established case law, the burden shifted to Pritchard at that point and required him to "produce an affidavit from a qualified expert witness that allege[d] specific facts establishing a cause of action." *Id.* Pritchard failed to do so.

Pritchard asserts in his opening brief that "[n]o case holds that 'proof' of medical negligence must come in the form of 'magic words' or some 'script'" and cites to *Douglas v. Bussabarger,* 73 Wn.2d 476, 478, 438 P.2d 829 (1968), for the

proposition that "[e]xpert testimony is not required to prove negligence where the breach is 'so obvious that a layman can recognize it.'" But, the complete statement in *Bussabarger* presents explicit acknowledgement by our Supreme Court that this is an exception to the general rule: "In the absence of negligence so obvious that a layman can recognize it, *some* medical testimony is necessary to support a finding that the doctor departed from the standard of reasonable care." 73 Wn.2d at 478*.* While Pritchard emphasizes that the evidence he did produce was "uncontradicted," he fails to offer any argument as to how this exception to the evidentiary standard is satisfied here; how the breach was "so obvious that a layman could recognize it." *Id.* Nor does he engage with the requirement regarding the *type* of evidence a plaintiff must produce in order to meet his burden on summary judgment in a claim for medical negligence. Having failed to carry his burden on appeal to establish that this exception applies to the facts of his case, we proceed under the standard established by controlling case law.

This court had recent occasion to reiterate that the expert witness in a suit for medical negligence "must be qualified to express an opinion on the applicable standard of care" *and* their "opinion must be based on more than conjecture or speculation." *Chervilova*, 30 Wn. App. 2d at 125. However, this was by no means a new pronouncement; this well-established standard has been recognized or explained in many opinions of our Supreme Court and divisions of this court. *See, e.g., Bennett v. Dep't of Lab. & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981) (explaining medical facts must be proven by expert testimony unless "observable by a layperson's senses and describable without medical training"); *Harris v.*

*Robert C. Groth, MD, Inc.,* 99 Wn.2d 438, 451, 663 P.2d 113 (1983) ("Absent exceptional circumstances . . . expert testimony will be necessary" to show both the standard of care and causation.); *Alexander v. Gonser*, 42 Wn. App. 234, 241, 711 P.2d 347 (1985) (discussing necessity of medical causation testimony in medical malpractice cases); *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993) (explaining declarations "containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment"); *Reese v. Stroh*, 128 Wn.2d 300, 308, 907 P.2d 282 (1995) ("Medical malpractice cases are a prime example of cases where [expert] testimony is needed. *Indeed, the general rule in Washington is that expert medical testimony on the issue of proximate cause is required in medical malpractice cases.*" (citation omitted) (emphasis added)); *Morinaga v. Vue*, 85 Wn. App. 822, 832, 831 P.2d 637 (1997) ("In an action for medical negligence, a [health care provider] is entitled to summary judgment once [the provider] establishes the plaintiff lacks competent expert testimony."); *Housel v. James*, 141 Wn. App. 748, 759, 172 P.3d 712 (2007) ("The policy behind this rule is to 'prevent laymen from speculating as to what is the standard of reasonable care in a highly technical profession.'" (quoting *Bussabarger,* 73 Wn.2d at 479)); *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 144, 341 P.3d 261 (2014) ("The applicable standard of care and proximate causation generally must be established by expert testimony."); *Reyes v. Yakima Health Dist.,* 191 Wn.2d 79, 89, 419 P.3d 819 (2018) ("[T]his requires 'an expert to say what a reasonable doctor would or would not have done, that the [defendants] failed to act in that manner, and that this failure cause [the] injuries.'"

(some alterations in original) (quoting *Keck,* 184 Wn.2d at 371)); *Behr v. Anderson*, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021) (explaining medical malpractice defendant can meet burden on summary judgment by showing lack of expert medical testimony).  The declaration Pritchard submitted from the pharmacist here does not meet either requirement under settled case law.

When a plaintiff seeks to defeat a motion for summary judgment, courts must engage in a preliminary inquiry in order to determine if the expert whose opinion is offered toward that end qualifies for purposes of the particular evidentiary requirements for claims of medical negligence.  *Chervilova,* 30 Wn. App. 2d 125; *see also Reese*, 128 Wn.2d at 308.  The court must "determine the relevant specialty and whether the expert and the defendant practice in the same field."  *Id.* at 126; *see also Winkler v. Giddings*, 146 Wn. App. 387, 392, 190 P.3d 117 (2008) (explaining trial court must make finding of fact under ER 104(a) as to whether expert qualifies to express opinion on standard of care in Washington).  However, if the expert does not practice in Washington, the court must separately determine whether they are "familiar with the Washington standard of care." *Chervilova*, 30 Wn. App. 2d at 126.  Wanat's declaration does not contain any reference to the standard of care for the medical professionals whose care was challenged, much less how he would be familiar with that standard.  Even if his CV was attached to the declaration that was filed *and* it established that he was trained or practiced as a pharmacist, he would still need to speak to the standard of care for prescribers and those medical professionals tasked with administering prescribed medications in a hospital setting.  *See Chervilova*, 30 Wn. App. 2d at

129-30; *Boyer v. Morimoto*, 10 Wn. App. 2d 506, 521-24, 449 P.3d 285 (2019). The trial court properly determined that Wanat's declaration was insufficient to meet either of these requirements.

Wanat's declaration is similarly silent on the question of causation. While Pritchard's complaint asserts that the additional surgery he underwent after the CBAG procedure was the "direct result of the negligence" of the purported Victoza overdose, Wanat's declaration makes no such connection. He simply describes the common side effects of Victoza, notes his opinion that an overdose of the drug could result in "very violent nausea and vomiting," and then, as to the sternal non-union, merely explains that "this is the site where [Pritchard's] sternum was separated to access his heart." He does not suggest, much less opine on a more probably than not basis, that the non-union was a result of nausea or vomiting from a Victoza overdose. In medical negligence cases, our Supreme Court has explained that qualified experts must also state "specific facts showing . . . how the defendant violated" the applicable standard of care. *Reyes,* 191 Wn.2d at 89. Specifically, "the expert must link [their] conclusions to a factual basis." *Id*. at 87. Wanat's declaration makes no statements regarding breach at all, nor does it explain how any breach by the hospital caused the injuries underlying Pritchard's claim. Further, he does not describe the factual basis for the statements he does offer, but simply asserts that he reviewed "records," without explaining their nature or source. Even recognizing that on summary judgment we view evidence in the light most favorable to the non-moving party, Pritchard, the evidence here is plainly insufficient and fails to establish any question of material fact as to a breach of the

applicable standard of care under RCW 7.70.040(1) or causation.  The trial court did not err when it granted summary judgment dismissal.

Affirmed.

WE CONCUR: