[Civ. No. 19013. First Dist., Div. One. June 12, 1961.]

DENICE RAE LIBBY, a Minor, etc., Appellant, v. ROBERT
S. CONWAY, Respondent.

Fitz-Gerald Ames, Sr., for Appellant.

Lamb & Hoge for Respondent.

HOYT, J., pro tem.*—This is an action for damages against a physician for malpractice. It was brought by the infant plaintiff by and through her mother, who was duly appointed her guardian *ad litem*. At the time of the trial plaintiff-appellant was about 3 years of age. She suffered from serious brain damage due either to congenital anomaly, damage at birth, or a combination of both. The trial court granted a nonsuit at the conclusion of plaintiff's case.

At the outset we are confronted with the fact that appellant's notice of appeal states that it is from the order denying plaintiff's motion for a new trial. An order denying a new trial is not appealable. (Code Civ. Proc., § 963.) Five days after the filing of the notice of appeal appellant filed with the clerk the notice to prepare clerk's and reporter's transcript. This filing was 17 days before the expiration of time to appeal. It stated, among other things, that the plaintiff had, "heretofore, to wit on the 15th day of April, 1959, filed her Notice of Appeal from the order of the above entitled court denying plaintiff's motion for a new trial and from the whole of said judgment rendered in favor of the defendant and against the plaintiff herein." Notices of appeal should be liberally construed so that appeals may be heard on their merits. It is quite obvious that respondent could not have been misled as to appellant's intention to appeal "from the whole of said judgment." Said notice of appeal and notice to prepare clerk's and reporter's transcript having been filed within the time for appeal, may be read together, and when so read establish that appellant is appeal-

*Assigned by Chairman of Judicial Council.

ing from the judgment. (*Luz* v. *Lopes*, 55 Cal.2d 54 [10 Cal.Rptr. 161, 358 P.2d 289]; *Adams* v. *Talbott*, 20 Cal.2d 415, 417 [126 P.2d 347]; *Kellett* v. *Marvel*, 6 Cal.2d 464 [58 P.2d 649]; *Glassco* v. *El Sereno Country Club, Inc.*, 217 Cal. 90 [17 P.2d 703]; *Title Guar. & Trust Co.* v. *Lester*, 216 Cal. 372 [14 P.2d 297]; *In re Smead's Estate*, 215 Cal. 439 [10 P.2d 462]; *Evola* v. *Wendt Const. Co.*, 158 Cal.App.2d 658 [323 P.2d 158]; *Girard* v. *Monrovia City Sch. Dist.*, 121 Cal. App.2d 737 [264 P.2d 115]; *Karrell* v. *Watson*, 116 Cal.App. 2d 769, 773 [254 P.2d 651, 255 P.2d 464]; *Holden* v. *California Emp. Stab. Com.*, 101 Cal.App.2d 427 [225 P.2d 634]; *Crane* v. *Livingston*, 98 Cal.App.2d 699, 702 [220 P.2d 744]; *Seven Up Bottling Co.* v. *Grocery Drivers Union*, 97 Cal.App.2d 623, 625 [218 P.2d 41]; *Chinnis* v. *Pomona Pump Co.*, 36 Cal. App.2d 633 [98 P.2d 560].)

Respondent cites *Hamasaki* v. *Flotho*, 39 Cal.2d 602, 608 [248 P.2d 910]. In that case the appeal was from an order *granting* a new trial which is an appealable order. (Code Civ. Proc., § 963.) There was nothing which could possibly be construed as an attempt to appeal from an order denying a new trial. Respondent also cites a number of Supreme Court cases beginning with *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614, 617 [255 P.2d 785], and ending with *Rodriquez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907], which hold that no appeal lies from the trial court's denial of defendant's motion for a new trial. No one questions this fact. In each of these cases there was actually an appeal from the judgment. The question is what does one have to do to give notice of appeal from a judgment. As shown above, the courts are, where no one is misled, very liberal in construing notices to be notices of appeal from a judgment. The court is of the opinion appellant has filed a sufficient notice of appeal from the judgment entered herein and this appeal may be considered on its merits.

The next question is as to whether the nonsuit should have been granted. ▋ A motion for nonsuit must be denied if there is any substantial evidence which, with the aid of all legitimate inferences favorable to plaintiff, tends to establish the averments of the complaint. ▋ All conflicts must be resolved in favor of the plaintiff, and if different conclusions or inferences can be reasonably drawn from the evidence the court must adopt those conclusions and inferences which are favorable to the plaintiff. (*Sunset Milling & Grain Co.* v. *Anderson*, 39 Cal.2d 773, 779 [249 P.2d 24]; *Golceff* v.

*Sugarman,* 36 Cal.2d 152, 153 [222 P.2d 665]; *Kirk* v. *Los Angeles Ry. Co.,* 26 Cal.2d 833, 837-838 [161 P.2d 673, 164 A.L.R. 1].)

█ The respondent, Robert S. Conway, M.D., testified in appellant's case that the appellant's mother came under his care in January of 1956; that while she was under his prenatal care he did not notice any abnormalities of the mother that might contribute to an abnormal birth, and that he could think of nothing in the history of the mother's pregnancy prior to birth that would indicate that the fetus had any congenital anomaly; that there was no evidence of injury to the mother either before the date of conception or up to the date of birth; that it is not good practice to force the child out by pressure on the abdomen; that it is good practice to permit nature to bring the fetal head through the birth canal by normal contractions of the uterus muscles; that it would not be good practice to exert considerable force upon the abdomen of the mother and force the fetal head through the birth canal; that if a crushing type of injury were great enough it could squeeze the brain and could cause the condition from which the child now suffers; that there should be no attempt to deliver a child until the cervix is 100 percent effaced and completely dilated; and that at the time of birth the child's head was normal size for its weight and sex.

Mrs. Rachel Juanita Libby, the appellant's mother, testified that she went to the hospital the morning of August 21, 1956; that Dr. Conway was a little late in getting there; that Mrs. Libby was not in the labor room very long when Dr. Conway came in, examined her, and told the nurse to get her ready for the delivery room; that the nurse said her cervix was not thin enough and that she had not dilated enough; that Dr. Conway said, "Well, get her ready anyhow"; that they took her in the delivery room, strapped her legs down, and Dr. Conway pushed on her stomach; that then he went to the other end of the table and told the two nurses and the anesthetist to push on her stomach, that they pushed—not very long, and then Mrs. Libby passed out or went under the anesthetic; that when Dr. Conway pressed on her abdomen he was pressing quite hard, when the anesthetist and the nurses were pressing they pressed real hard and it produced severe pain; and that when she came to the baby was born.

Dr. George W. Plummer testified that he was a physician and surgeon, specializing in pediatrics; that Dr. Conway called him into the case when appellant was less than 24 hours

old; that cephalhematoma is where the membrane covering the skull is separated from the skull proper; that in his opinion the cephalhematoma which he observed clinically by examination of appellant could not be called a congenital anomaly; and that the cephalhematoma, *per se,* is due to pressure upon the skull during delivery.

Dr. D. J. Tepper testified that he is an osteopathic physician and surgeon; that he examined Mrs. Libby; that her pelvis is the "most normal . . . a woman can have"; that external pressure upon the abdomen during childbirth in an effort to press the head through the canal can cause a sudden expulsion and this is known to cause cerebral hemorrhage; that it is not good practice to exert any pressure upon the abdomen of a mother undergoing labor; that in his opinion the damage to the brain and skull of the child was caused by birth injury and not by congenital anomaly; and that it was his opinion that the brain and other physical damage to the child was due to the squeezing down of the area of the womb, or uterus, on the outside of the abdomen. With this testimony in the record a nonsuit should not have been granted and the case must be reversed. (*Baley* v. *J. F. Hink & Son,* 133 Cal.App.2d 102, 107 [283 P.2d 349]; *Turner* v. *Ralph M. Parsons Co.,* 117 Cal.App. 2d 109, 111 [254 P.2d 970]; *Copeland* v. *Rabing,* 110 Cal.App. 2d 631, 635 [243 P.2d 119].)

Various rulings of the trial court on the admissibility of evidence are attacked, but since the case must be sent back for a new trial little needs to be said concerning them other than to point out the applicable rules. ■ Prejudicial error may be committed by, "limiting the scope of the examination of defendant who was called as an adverse witness pursuant to the provisions of section 2055 of the Code of Civil Procedure." ■ Section 2055 does not suggest any reason why the defendant in a malpractice case should not be examined with regard to the standard of skill and care ordinarily exercised by doctors in the community, and "such examination should be permitted under section 2055 even though it calls for expert testimony." (*Lawless* v. *Calaway,* 24 Cal.2d 81, 89, 91 [147 P.2d 604].) ■ "Hypothetical questions which omit material undisputed evidence essential to a fair opinion by an expert are improper." (*Parlier Fruit Co.* v. *Fireman's etc. Ins. Co.,* 151 Cal.App.2d 6, 14 [311 P.2d 62].) ■ On the other hand, "While the hypothesis contained in the question should have some evidence to sustain it, the question may be framed on any reasonable theory which can be deduced from

the evidence and the statements may assume any facts, within the limits of the evidence, upon which the opinion of the expert is derived provided the question is not unfair or misleading.'' (*People* v. *Becker*, 94 Cal.App.2d 434, 444 [210 P.2d 871].)

Appellant also urges that the precise grounds of nonsuit were not stated. ''The correct rule is that grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion. This rule is complementary to the requirement that a party specify the grounds upon which his motion for nonsuit is based.'' (*Lawless* v. *Callaway*, *supra*, at p. 94.) In this case respondent's specification of the grounds upon which his motion for nonsuit was based was sufficient. It stated ''that there is no showing of any negligence and further there is a failure of proof that any act or omission on behalf of the defendant proximately caused the injury to plaintiff.''

The judgment is reversed and the case is remanded to the superior court for a new trial.

Bray, P. J., and Tobriner, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 9, 1961.