[Crim. No. 12291.   Second Dist., Div. Five.   June 20, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN BONNER
BROWN, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendant and Respondent.

FRAMPTON, J. pro tem.*—The defendant was charged by information filed by the District Attorney of Los Angeles County on January 18, 1966, with the crime of violation of section 11500 of the Health and Safety Code (possession of heroin). On January 26, 1966, he was arraigned, at which time he moved to dismiss the information under the provisions of section 995 of the Penal Code. On February 2, 1966, the motion was argued and granted upon the grounds that the defendant had been committed without reasonable or probable cause. The appeal is from the order dismissing the information.

The testimony adduced at the preliminary examination discloses the following:

James E. Sanford, a police officer for the City of Los Angeles, at about 7 p.m. on November 23, 1965, saw the defendant at the rear of a bar situated at No. 2 Windward, in the Venice area of the City of Los Angeles. Officer Sanford had been informed that the defendant was working at this bar and that he used and was selling heroin. He was also informed that the defendant owned a brown Cadillac automobile, and that he conducted his narcotics business from apartment 4 at No. 30 Horizon in the Venice area of the City of Los Angeles.

At the time Officer Sanford first observed the defendant, he was entering a 1960 model Cadillac, white in color. There were two other persons with the defendant at this time, a man and a woman. Officer Sanford interviewed the defendant and his two companions, during which time the defendant identified himself and stated that he did use heroin, that he was not under the influence of heroin at the time but that he had had a beer, which made him look like he was under the influence of heroin. He displayed his right forearm, which showed numerous needle marks on the inner portion thereof. The defendant stated that he had last taken a shot of heroin that morning and that he lived at 428 Rose Avenue. The defendant also advised one of his companions to tell the truth "as to her use and their activities at the location." No arrest was made at this time.

When Officer Sanford left the defendant and his two companions at the rear of the bar, he immediately went to No. 30 Horizon, where he interviewed the landlady of the apartment house. She gave Officer Sanford a key to apartment No. 4 at

*Retired judge of the superior court sitting under assaignment by the Chairman of the Judicial Council.

this address. Sanford then went down a walkway outside of the building to a point opposite the kitchen window of apartment No. 4. The curtain on this window was short on the left- and right-hand side and also in the middle, leaving an open view into the kitchen. From this position Sanford observed the defendant and the two persons who had been with him at the rear of the bar. He testified that ''on arrival I observed Mr. Brown holding a blue balloon in his hand . . . He was shaking this up and down, in and up-and-down motion. He then took a razor blade and cut the balloon I believe twice. He then poured an unknown substance to me into a spoon which was resting on the sink. . . . I then observed Mr. Brown to place a liquid into the spoon from a cup that was on the sink. He then held the spoon in his left hand and the cigarette lighter in his right hand which was lit, held it under the spoon for approximately one minute or so. He then placed the cigarette lighter down and picked up a needle and syringe which was also resting on the sink shelf and placed it in this liquid and extracted the extractor and the syringe backwards. I next observed him place the needle into his left forearm— correction—his right forearm area, and I noted blood to be running. And I at this time left my vantage point.'' He testified further that the liquid which he saw poured into the spoon appeared to be clear and the other substance appeared to be powdery.

Officer Sanford then entered apartment 4 with the aid of the key given him by the landlady, and placed the defendant under arrest. He found one syringe and hypodermic needle on the sink shelf and another he took from the left hand of the defendant. He also recovered the spoon with a small piece of cotton in the center and the pieces of the blue balloon used by the defendant. There appeared to be, to a very light extent, a white powdery substance on the pieces of the blue balloon. These items were booked as evidence, and were subsequently examined by an expert forensic chemist in the laboratory of the police department.

The forensic chemist, whose testimony was received by way of stipulation, based upon his written report of his examination and findings, found a white material in the cotton found in the spoon. The testimony of Sanford, as hereinabove noted, disclosed that there was a .very light residue of a white powdery substance clinging to the pieces of the blue balloon when he recovered them. It was the chemist's opinion, after examining all of the paraphernalia, that ''there was no narcotic or

dangerous drug content to them." It should be noted here that there is nothing in the record to show that there was insufficient material found on the paraphernalia upon which an expert chemist could properly make a quantitative and a qualitative analysis. On the contrary, the evidence discloses that there was some residue on the paraphernalia and that upon examination thereof it was found not to contain any narcotic or dangerous drug.

Officer Sanford's observation of the defendant injecting himself occurred at approximately 7 :10 p.m. Sanford and the defendant arrived at the police station at approximately 8 :15 to 8 :30 p.m., where the defendant was allowed to be seated. According to Sanford's testimony, while at the police station the defendant "would continually fall off to sleep and we would have to wake him; then he would fall off to sleep again." He was unable to examine the defendant's eyes because he would close them and not allow him to examine them.

At the police station, after the defendant was told that he had the right to remain silent, the right to have an attorney present, and that any statements that he made could be used against him in further court proceedings, he then told Officer Sanford, upon being questioned, that "all the stuff belongs to me," that "there was no more stuff in the apartment and he wanted me to kick—or to release the other three persons that were present and he would take all the blame for it." The warning given to the defendant meets with the. requirements of the rule as laid down in *Escobedo* and *Dorado*,[1] but does not meet the requirements of the rule as laid down in *Miranda*.[2] Under *People* v. *Rollins,* 65 Cal.2d 681, 683 [56 Cal.Rptr. 293, 423 P.2d 221], these statements are inadmissible, and we will disregard them here.

Richard L. Hill, a police officer for the City of Los Angeles, whose qualifications as an expert in the use, symptoms and effects of narcotics were stipulated to, testified that he was present in the courtroom and heard the testimony of Officer Sanford in regard to the latter's observation of the conduct of the defendant in preparing for an injection and in injecting himself and also in regard to the defendant's tendency to drop off to sleep while at the police station. It was the opinion of Officer Hill, on the hypothesis predicated upon

[1]*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] ; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Sanford's testimony, that the defendant had injected himself with heroin.

After Officer Hill had stated his opinion, the prosecutor asked him for his reasons as follows: "Q All right. And what is the basis for that, Officer, using the items that have been heretofore marked? A First of all, from the description about the balloon, the blue balloon which was cut with a razor blade, this is the most common practice of the narcotic addict and the peddlers on the street of packaging and carrying the narcotic heroin. Q Would the contents of the white [sic] balloon having a thin residue of white powder have any significance? A Yes, sir. The residue or debris that he stated was in the balloon which was a—looked like—appeared to be a white, powdery substance would be that of heroin.''

It is the contention of the prosecution that they have shown, by circumstantial evidence, that there was probable cause to believe that the defendant was in possession of heroin.

The prosecution urges that "whatever may be established by direct evidence in a criminal case may also be established by circumstantial evidence," citing 20 American Jurisprudence, section 273, page 261; *United States* v. *Agueci* (2d Cir. 1962) 310 F.2d 817; and *Toliver* v. *United States* (9th Cir. 1955) 224 F.2d 742. This, no doubt, is a correct statement of the rule. The prosecution urges further that it has also been held that where a minor has been furnished a marijuana cigarette or heroin, the testimony of the minor describing the physical characteristics of the cigarette or heroin and the symptoms he or she felt upon using the cigarette or heroin would afford an adequate basis for an expert to testify that in his opinion the item which the minor had been furnished was a marijuana cigarette or heroin, even though such cigarette or heroin had never been recovered, having been consumed or destroyed by the minor in the course of its use. (See *People* v. *Clemmons,* 208 Cal.App.2d 696, 700, 701 [25 Cal.Rptr. 467]; *People* v. *Medina,* 198 Cal.App.2d 224, 231 [17 Cal.Rptr. 722]; *People* v. *Shaffer,* 182 Cal.App.2d 39, 43 [5 Cal.Rptr. 844]; *People* v. *Candalaria,* 121 Cal.App.2d 686, 689 [264 P.2d 71]; *People* v. *Rosemont,* 221 Cal.App.2d 500, 502 [34 Cal.Rptr. 667].) However, in the case at bench, the question is not the competency of the evidence; it is the sufficiency of the evidence to show reasonable or probable cause for holding the defendant for trial.

The prosecution, by presenting the testimony of the forensic

chemist, the arresting officer, and the expert on the use and effects of narcotics, represented to the court that each such witness was worthy of credit. (*People* v. *McFarlane,* 134 Cal. 618, 620 [66 P. 865, 67 P. 138].) The testimony of the forensic chemist, offered by way of stipulation, disclosed that the defendant had not possessed heroin. On the other hand, the testimony of the prosecution's expert, based upon the hypothesis posed by the testimony of the arresting officer, disclosed that the defendant had possessed heroin. It is clear from the record, however, that one very important factor was not contained in the hypothesis upon which Officer Hill expressed his opinion that the defendant had injected himself with heroin. That factor was that a qualified expert had examined the paraphernalia used by the defendant and the residue found thereon, and as a result of such examination he had found no evidence of a narcotic or dangerous drug. It is true that no objection was made when the hypothesis on which Officer Hill expressed his opinion did not include the testimony of the chemist. However, defense counsel promptly objected when it appeared that Hill's opinion was based on the assumption that the residue, a white powdery substance, would be that of heroin. What Officer Hill's opinion would have been had this factor, shown by the prosecution's evidence, been included in the hypothetical question, is left to conjecture. The absence of this factor in the hypothesis posed to Officer Hill renders his opinion valueless as against the opinion of the forensic chemist. Undisputed facts, when material, must always be assumed. (32 Corpus Juris Secundum, Evidence, section 551(2)b, pages 526, 528; *Libby* v. *Conway,* 192 Cal.App. 2d 865, 870 [13 Cal. Rptr. 830]; *Parlier Fruit Co.* v. *Fireman's etc. Ins. Co.,* 151 Cal.App.2d 6, at p. 14 [311 P.2d 62].) In this state of the record the motion to dismiss the information for lack of probable cause was properly granted.

The order is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied July 12, 1967.