[No. 57266-6.   En Banc.   August 15, 1991.]

DEBORAH DOUGLAS, *Petitioner*, v. MARK A. FREEMAN, *Defendant*, SISTERS OF PROVIDENCE IN WASHINGTON, *Respondent*.

244

*Theodore D. Silva* and *Riddell, Williams, Bullitt & Walkinshaw*, by *Thomas C. McKinnon*, for petitioner.

*Williams, Kastner & Gibbs*, by *Rebekah R. Ross* and *Mary H. Spillane*, for respondent.

ANDERSEN, J. —

## FACTS OF CASE

At issue in this case is whether there was sufficient evidence to support the jury's finding of corporate negligence on the part of Providence Dental Clinic.

On April 27, 1981, Deborah Douglas, plaintiff herein, went to the Providence Dental Clinic (hereafter referred to as the clinic) because of discomfort in the lower left side of her mouth. She saw Dr. Candice McMullan, director of the clinic and a University of Washington Dental School faculty member. Dr. McMullan examined plaintiff and recommended that her three wisdom teeth be extracted.

Plaintiff returned to the clinic on April 29, 1981. She testified that a dental assistant escorted her into a room, asked if she had taken the prescribed medications, put a bib on her and some instruments on a tray, and left. According to plaintiff, the assistant returned to the room only to give her postoperative instructions after the extractions were complete. Dr. Mark Freeman, whom plaintiff had not met previously, extracted her wisdom teeth. After the extractions, plaintiff's tongue and mouth felt numb. It was later determined that her lingual nerve was damaged during the extractions, severely limiting her ability to taste and feel on the right side of her tongue and mouth.

At the time of the extractions, Dr. Freeman was practicing dentistry at the clinic pursuant to a University of Washington residency program. Residents enrolled in the program rotate to various dental clinics in Seattle. Dr. Freeman had graduated from dental school and had passed regional dental board examinations, but was not licensed to practice dentistry in Washington. At the clinic, Dr. Freeman was supervised by Dr. McMullan. Dr. McMullan apparently consulted with Dr. Freeman regard-

ing plaintiff's case and worked in an adjoining room when Dr. Freeman performed the extractions. Plaintiff testified, however, that Dr. McMullan never checked on Dr. Freeman during the extractions.

On April 27, 1984, plaintiff sued Dr. Freeman and the clinic for damages arising from injury to her lingual nerve. Plaintiff sought recovery on theories of negligence, failure to obtain informed consent, corporate negligence, and violation of the Consumer Protection Act.

The case was tried to a jury in 1988. The jury returned separate verdicts for Dr. Freeman on the negligence claim, for Dr. Freeman and the clinic on the informed consent and Consumer Protection Act claims, but against the clinic on the corporate negligence claim. The jury awarded plaintiff $250,000 in damages.

The clinic thereupon filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied the motion on the basis that there was evidence from which the jury could have concluded that the clinic's failure to have a dental assistant present during the extractions rendered it liable for corporate negligence. The clinic appealed and the Court of Appeals reversed, finding insufficient evidence to support the jury's corporate negligence verdict.[1] Plaintiff then petitioned this court for review. We granted review and reverse the Court of Appeals.

Three issues are presented.

## ISSUES

ISSUE ONE. Was the evidence sufficient to support the jury's verdict against the clinic on the corporate negligence claim?

ISSUE TWO. Did the trial court err in denying the clinic's motion in limine to bar all testimony regarding Dr. Freeman's unlicensed status?

ISSUE THREE. Was the jury properly instructed?

---

[1]*Douglas v. Freeman*, 57 Wn. App. 183, 191, 787 P.2d 76, *review granted*, 115 Wn.2d 1007 (1990).

## DECISION

ISSUE ONE.

CONCLUSION. We find ample testimony in the record to support the jury's conclusion that the clinic's negligence was a proximate cause of plaintiff's lingual nerve injury.

The general question underlying this issue is whether the Court of Appeals properly reversed the trial court's denial of the clinic's motion for judgment notwithstanding the verdict on the corporate negligence claim. In ruling on a motion for judgment notwithstanding the verdict, a trial court exercises no discretion.[2] The court must accept the truth of the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced.[3] The evidence must be viewed in the light most favorable to the nonmoving party; the court may grant the motion only where there is no competent evidence or reasonable inference that would sustain a verdict for the nonmoving party.[4] " 'If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.' "[5]

The Court of Appeals concluded that a judgment notwithstanding the verdict was appropriate because it found no evidence from which the jury could reasonably infer that the clinic's negligent conduct caused plaintiff's injury. The court thus overturned the jury's verdict finding the clinic liable for corporate negligence.[6]

---

[2]*Sepich v. Department of Labor & Indus.*, 75 Wn.2d 312, 321, 450 P.2d 940 (1969); *Thompson v. Grays Harbor Comm'ty Hosp.*, 36 Wn. App. 300, 302, 675 P.2d 239 (1983).

[3]*Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 243, 744 P.2d 605 (1987); *Grader v. Lynnwood*, 53 Wn. App. 431, 437, 767 P.2d 952, *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894, *reh'g denied*, 493 U.S. 986 (1989).

[4]*Lockwood*, 109 Wn.2d at 243; *Thompson*, 36 Wn. App. at 302.

[5]*Lockwood*, 109 Wn.2d at 243 (citing *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978)).

[6]*Douglas*, 57 Wn. App. at 191.

■ The doctrine of corporate negligence in cases such as this is based on a nondelegable duty that a hospital owes directly to its patients.[7] One commentary finds four such duties owed by a hospital under the doctrine of corporate negligence: (1) to use reasonable care in the maintenance of buildings and grounds for the protection of the hospital's invitees; (2) to furnish the patient supplies and equipment free of defects; (3) to select its employees with reasonable care; and (4) to supervise all persons who practice medicine within its walls.[8] It is this latter duty, the duty of supervision, that is at issue in this case.

■ The trial court properly instructed the jury that in order to find for plaintiff on the corporate negligence claim, it had to find a duty of care owed to plaintiff by the clinic, a breach of that duty, and proximate cause between the breach and plaintiff's injury.[9] Since the clinic claims that none of these elements was supported by sufficient evidence, we will briefly discuss each.

In a professional malpractice case, the standard of care is based on proof of the customary and usual practices within the profession.[10] This court has held that the standards of care to which a hospital should be held may be defined by the accreditation standards of the Joint Commission on Accreditation of Hospitals and the hospital's own bylaws.[11] Other decisions have found the standard of

---

[7]See *Pedroza v. Bryant*, 101 Wn.2d 226, 230, 677 P.2d 166 (1984); *Alexander v. Gonser*, 42 Wn. App. 234, 240, 711 P.2d 347 (1985), *review denied*, 105 Wn.2d 1017 (1986); Comment, *The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians*, 50 Wash. L. Rev. 385 (1975).

[8]Comment, 50 Wash. L. Rev. at 412.

[9]See *Pedroza*, 101 Wn.2d at 228; *Alexander*, 42 Wn. App. at 240-41; *see also* RCW 7.70.040.

[10]*Physicians and Surgeons — Malpractice — Court Disregard for the Standard of the Profession — The Legislative Response*, 51 Wash. L. Rev. 167, 170 (1975).

[11]*Pedroza*, 101 Wn.2d at 233-34; *see also Alexander*, 42 Wn. App. at 240.

care for hospitals defined by statute.[12] Usually, the standard of care must be established by expert testimony.[13]

The parties agree that the clinic had a statutory duty to supervise unlicensed students under former RCW 18.32-.030(3) and (10) of the dentistry code.[14] The code requires a person to obtain a license before practicing dentistry in Washington (RCW 18.32.091), but lists exemptions from this and other code requirements in RCW 18.32.030. The relevant portions of RCW 18.32.030 are as follows:

> The following practices, acts and operations are excepted from the operation of the provisions of this chapter:
>
> . . .
>
> (3) Dental schools or colleges approved by the board, and the practice of dentistry by students in dental schools or colleges approved by the board, when acting under the direction and supervision of registered and licensed dentists acting as instructors;
>
> . . .
>
> (10) Students practicing or performing dental operations, under the supervision of competent instructors, in any reputable dental college;

Former RCW 18.32.030(3), (10).

These statutory exceptions were presented to the jury and several expert witnesses testified regarding the clinic's duty to supervise Dr. Freeman thereunder. The clinic argues, however, that no expert witness testified regarding any duty on the clinic's part to provide Dr. Freeman with a dental assistant.

Plaintiff counters that separate testimony regarding the need for an assistant was unnecessary since the duty

---

[12]*See Byerly v. Madsen*, 41 Wn. App. 495, 503, 704 P.2d 1236, *review denied*, 104 Wn.2d 1021 (1985); *Schoening v. Grays Harbor Comm'ty Hosp.*, 40 Wn. App. 331, 335, 698 P.2d 593, *review denied*, 104 Wn.2d 1008 (1985); *see also* RCW 7.70.040(1).

[13]*McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989); *Petersen v. State*, 100 Wn.2d 421, 437, 671 P.2d 230 (1983).

[14]RCW 18.32.030 was amended in 1989 and 1991. Laws of 1989, ch. 202, § 13, p. 1011; Laws of 1991, ch. 3, § 59, p. 32. The changes are insignificant and not relevant to this case.

to provide the necessary assistance is included within the clinic's duty to supervise student dentists. Plaintiff also contends that Dr. Freeman's testimony that he needed assistance during wisdom tooth extractions constituted sufficient standard of care evidence regarding dental assistants.

■ We need not decide whether the statutory duty to supervise includes the duty to provide the necessary professional assistance since Dr. Freeman by his own testimony provided ample evidence of such a duty. In his testimony as an adverse witness in plaintiff's case in chief and during examination when testifying for the defense, Dr. Freeman insisted several times that the presence of a dental assistant was essential during a wisdom tooth extraction. "I never do a surgical extraction without an assistant, because . . . they are pretty critical in holding the tissue and doing the suctioning and the things that have to be done so that you have some hands free to do the actual elevation of the tooth." In describing a wisdom tooth extraction, Dr. Freeman in his testimony also referred several times to the importance of the assistant's role.

Plaintiff was justified in relying on this testimony by Dr. Freeman to satisfy her burden of proof.[15] Indeed, other jurisdictions have stated expressly that a defendant, testifying as an adverse witness, may provide the expert testimony that establishes the standard of care in a medical malpractice case.[16]

---

[15]See *Hines v. Foster*, 166 Wash. 165, 173, 6 P.2d 597 (1932); *Williams v. Brockman*, 30 Wn.2d 734, 740-41, 193 P.2d 863 (1948); *Lettengarver v. Port of Edmonds*, 40 Wn. App. 577, 581, 699 P.2d 793 (1985).

[16]See *Clark v. Norris*, 226 Mont. 43, 52-53, 734 P.2d 182 (1987); *Smith v. Hoffman*, 656 P.2d 1327, 1329 (Colo. Ct. App. 1982); *Greenwell v. Gill*, 660 P.2d 1305, 1308 (Colo. Ct. App. 1982); *Libby v. Conway*, 192 Cal. App. 2d 865, 870, 13 Cal. Rptr. 830 (1961).

Once the applicable standard of care is established by experts, further expert testimony is not required to prove a breach of that standard.[17]

The clinic contends that plaintiff introduced no testimony of any kind that it breached its duty to supervise Dr. Freeman. One expert testified that if, as Dr. McMullan claimed, she saw plaintiff 2 days before the extraction, discussed the treatment plan for plaintiff with Dr. Freeman and was in the next room during the extractions, her supervision was adequate. Another expert testified that if Dr. McMullan saw the patient 2 days beforehand, talked with Dr. Freeman before the procedure and went over the X-rays with him, was in the adjacent room during the procedure and peered in during the procedure, her supervision was adequate. Dr. Freeman was "confident" that Dr. McMullan performed the steps outlined above, but also said he had no direct recollection of Dr. McMullan checking in on him. Dr. McMullan was "fairly certain" that she checked on Dr. Freeman during the procedure.

Plaintiff, however, voiced no doubts in saying that no one else came into the room while her wisdom teeth were extracted. While Dr. Freeman testified that an assistant must have been present during the procedure, he added that he had no independent recollection of the procedure or of an assistant. Thus, as the Court of Appeals observed, plaintiff's testimony that the assistant left before the extraction and did not return until afterward was "essentially uncontroverted."[18] Her testimony is sufficient to raise a factual issue regarding whether the clinic breached its duty to supervise Dr. Freeman.

[17]*Petersen*, 100 Wn.2d at 437; *Douglas v. Bussabarger*, 73 Wn.2d 476, 481, 438 P.2d 829 (1968); 51 Wash. L. Rev. at 173; *Physicians and Surgeons*, 15 Gonz. L. Rev. 931, 936 (1980).

[18]*Douglas v. Freeman*, 57 Wn. App. 183, 189, 787 P.2d 76, *review granted*, 115 Wn.2d 1007 (1990).

■ ■ The question of whether a defendant breached the standard of care is separate from whether the breach was the proximate cause of the patient's damages.[19] Expert testimony usually is required to establish proximate cause in medical malpractice cases.[20] It is not always necessary, however, to prove every element of causation by medical testimony. If, from the facts and circumstances and the medical testimony given, a reasonable person can infer that the causal connection exists, the evidence is sufficient.[21]

The clinic argues that there was insufficient evidence of causation, and also claims that the jury's exoneration of Dr. Freeman means that it should be exonerated as a matter of law.[22] We disagree. It is well settled that under the doctrine of corporate negligence, a hospital can be held liable for its own negligence in the absence of any negligence on the part of the treating physician.[23] As noted earlier, the corporate negligence theory is based on the proposition that a hospital owes an independent duty of care to its patients.[24] In *Schoening v. Grays Harbor Comm'ty Hosp.*, 40 Wn. App. 331, 698 P.2d 593, *review denied*, 104 Wn.2d 1008 (1985), a plaintiff's settlement with doctors did not relieve the hospital of liability

---

[19]*Byerly*, 41 Wn. App. at 503.

[20]*McLaughlin*, 112 Wn.2d at 837; *Breit v. St. Luke's Mem. Hosp.*, 49 Wn. App. 461, 464, 743 P.2d 1254 (1987).

[21]*McLaughlin*, 112 Wn.2d at 837; *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981).

[22]*See Benedict v. St. Luke's Hosps.*, 365 N.W.2d 499, 504-05 (N.D. 1985).

[23]Annot., *Hospital's Liability for Negligence in Failing To Review or Supervise Treatment Given By Doctor, or To Require Consultation*, 12 A.L.R.4th 57, 61 (1982); *see also Bivens v. Detroit Osteopathic Hosp.*, 77 Mich. App. 478, 487-88, 258 N.W.2d 527 (1977) (decedent's doctor exonerated but hospital liable for violating standard of ordinary care owed decedent), *rev'd on other grounds*, 403 Mich. 820 (1978).

[24]*Schoening*, 40 Wn. App. at 334.

because the hospital could still be liable for any breach of its separate duties owed to plaintiff.[25]

In a somewhat analogous case, where suit was brought against a teacher and a public school system, the New Mexico Supreme Court explained that verdicts for the teacher and against the school system were not inconsistent because the claims against the two parties were based on different theories of liability.[26] Plaintiff claimed different acts of negligence as to the teacher, who did not incur liability, and the school system, which did. The verdict against the school system did not depend on the theory of respondeat superior, where the master's liability arises out of the servant's negligence. Since the issues against the defendants were different, the verdicts were not inconsistent.[27]

Similarly, there is no claim here that the clinic is vicariously liable for Dr. Freeman's negligence under the theory of respondeat superior. Rather, the claim is one of corporate negligence which imposes on the clinic a nondelegable duty owed directly to plaintiff, regardless of the details of the doctor-clinic relationship.[28] Plaintiff charged Dr. Freeman with negligence in extracting her teeth and the clinic with negligence in supervising him. These are different theories of liability based on different standards of care. Under the facts presented, the jury's finding that Dr. Freeman was not liable does not absolve the clinic of negligence in supervising or assisting him. Thus, the jury's exoneration of Dr. Freeman does not exonerate the clinic as a matter of law.

We agree with plaintiff that Dr. Freeman himself provided the necessary evidence of causation. Dr. Freeman stated several times that wisdom tooth extractions

---

[25]*See Schoening*, 40 Wn. App. at 334-35.

[26]*Maxwell v. Santa Fe Pub. Schs.*, 87 N.M. 383, 385, 534 P.2d 307 (1975).

[27]*Maxwell*, 87 N.M. at 388 (Sutin, J., concurring).

[28]*See Pedroza v. Bryant*, 101 Wn.2d 226, 229, 677 P.2d 166 (1984).

require an assistant, and he repeatedly referred to the assistant's role as he explained the extraction procedure. He described the assistant as suctioning blood and holding the tissue aside after the incision had been made so that he could see and reach the tooth. "It would be virtually impossible to do so (perform an extraction) trying to hold instruments at different times to get to a tooth. It is essential that someone is there to do that. You can't keep all tissue out of the way to do what you have to do without assistance."

Two expert witnesses testified that the lingual nerve could be damaged at stages where Dr. Freeman stated he required an assistant. One expert testified that the lingual nerve could be damaged during injection of the anesthetic, incision of the soft tissues, removal of the bone around or over the tooth, removal of the tooth, and during the stitching of the incision. We conclude that it is reasonable to infer from this testimony that an assistant's actions in suctioning and holding tissue would be necessary during some of these steps. Another expert testified that damage to plaintiff's lingual nerve was probably caused by a surgical instrument during the removal of her wisdom tooth, "and the surgical instruments that I am talking about are either a scalpel, an elevator in retracting the tissue, or probably, most likely the drill." (This expert had testified earlier that the drill is used to remove the bone surrounding the tooth.) Here again, tissue would have been cut and blood suctioned before and during drilling, thus, according to Dr. Freeman, necessitating the presence of an assistant. Dr. Freeman never stated directly that a dental assistant was necessary to prevent lingual nerve damage, but a jury could reasonably infer from the evidence that the assistant's absence caused him to perform the extractions in a manner that injured plaintiff.

In reviewing a motion for judgment notwithstanding the verdict, it is essential to keep in mind that a verdict does not rest on speculation or conjecture when

founded upon reasonable inferences drawn from circumstantial facts.[29] We perceive ample circumstantial evidence drawn from the testimony of Dr. Freeman and other witnesses that the absence of proper supervision and assistance contributed to plaintiff's injury. Viewing the record in the light most favorable to plaintiff, as we must, there is evidence from which a jury could reasonably infer that the clinic's negligence was a proximate cause of plaintiff's nerve damage. We conclude that this evidence of causation is sufficient to support the jury's verdict against the clinic on the corporate negligence issue.

ISSUE TWO.

CONCLUSION. The trial court did not abuse its discretion in denying the clinic's motion in limine since the nonlicensure evidence was relevant and not unfairly prejudicial.

■ The granting or denial of a pretrial motion to exclude evidence is a matter within the trial court's discretion.[30] The trial court should grant a motion in limine if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial, and if the evidence is so prejudicial in its nature that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during the trial.[31]

The clinic brought a motion in limine to bar all testimony regarding Dr. Freeman's lack of a license to practice dentistry. The clinic argued that the evidence of nonlicensure was highly prejudicial and would force it to explain that there are statutory exceptions to the

---

[29]*Arnold v. Sanstol*, 43 Wn.2d 94, 98-99, 260 P.2d 327 (1953); *Thompson v. Grays Harbor Comm'ty Hosp.*, 36 Wn. App. 300, 304, 675 P.2d 239 (1983).

[30]*Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 89-90, 549 P.2d 483 (1976); *Gammon v. Clark Equip. Co.*, 38 Wn. App. 274, 286, 686 P.2d 1102 (1984), *aff'd*, 104 Wn.2d 613, 707 P.2d 685 (1985).

[31]*Fenimore*, 87 Wn.2d at 91; *Amend v. Bell*, 89 Wn.2d 124, 130, 570 P.2d 138, 95 A.L.R.3d 225 (1977).

licensing requirement. Plaintiff responded that the evidence of nonlicensure was relevant to her informed consent and Consumer Protection Act claims and thus admissible. (At trial, plaintiff argued that the lack of Dr. Freeman's license was a material fact that should have been disclosed to her before the extractions under the doctrine of informed consent, and she claimed that the clinic charged the same fee for work by licensed and unlicensed dentists in violation of the Consumer Protection Act.)

The trial court denied the clinic's motion to exclude the nonlicensure evidence, finding that the clinic's ability to explain that exceptions to the licensing requirement existed lessened any prejudice that might result from the revelation that Dr. Freeman was not licensed. The court also found the evidence of nonlicensure relevant and particularly appropriate for the jury to consider under the informed consent claim.

The evidence of nonlicensure was relevant to issues plaintiff presented and any prejudice resulting therefrom was dissipated by the clinic's discussion of the licensing exemption statute. The trial court did not abuse its discretion in denying the clinic's motion in limine.

ISSUE THREE.

CONCLUSION. The jury was properly instructed, as the instructions given allowed both parties to argue their theories of the case, were not misleading and correctly stated the law.

■ The number and specific language of the instructions are matters left to the trial court's discretion.[32] The test for the sufficiency of instructions involves three determinations: (1) that the instructions permit the party to argue that party's theory of the case; (2) that the instruction(s) is/are not misleading; and (3) when read as

---

[32]*Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983); *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 225, 562 P.2d 1276, *review denied*, 89 Wn.2d 1010 (1977).

a whole all the instructions properly inform the trier of fact on the applicable law. No more is required.[33]

The clinic contends that the trial court erred in failing to give its proposed instructions 31 and 32 and in giving instruction 17. The clinic's proposed instructions read as follows:

> A dental resident in a dental college program approved by the Washington State Board of Dental Examiners does not need a license to legally practice dentistry when acting under the direction and supervision of a registered and licensed dentist acting as an instructor.

Defendant's proposed instruction 31.

> A dental resident practices dentistry in a dental college if he is in an outlying facility that has an affiliation with the University of Washington School of Dentistry or Medicine.

Defendant's proposed instruction 32.

The clinic cited as legal authority for both proposed instructions the relevant subsections of the licensing exemption statute, former RCW 18.32.030(3) and (10). Instead of giving these two proposed instructions, the court gave instruction 11, which actually set forth former RCW 18.32.030(3) and (10). That instruction enabled the clinic to argue the theories it presented in proposed instructions 31 and 32, was not misleading and correctly stated the law. The court did not abuse its discretion in refusing to give the two proposed instructions.

The clinic raises a related issue in a supplemental brief filed pursuant to RAP 13.7(d). In this brief, it asks this court to hold that the rotation sites for the University of Washington's dental residency program fall within the scope of the licensure exemption of RCW 18.32.030. This is what the clinic urged the trial court to do in accepting proposed instruction 32. The trial court would not so hold, nor will this court. This request was not presented as a separate issue before the Court of Appeals or in the

---

[33]*Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988); *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 275, 796 P.2d 737 (1990).

petition for review or answer. We decline to consider an issue raised for the first time in a supplemental brief filed after review has been accepted.

The clinic next contends that the trial court erred in giving Instruction 17, which read as follows:

> The violation, if you find any, of a statute is negligence as a matter of law. Such negligence has the same effect as any other act of negligence.

■ The concept of negligence per se, as it applies to this case,[34] permits a court to substitute legislatively required standards of conduct for lesser common law standards of reasonableness.[35] If a defendant violates an applicable statutory duty, the court may properly instruct the jury that the defendant was in fact negligent.[36]

The only statutory provisions before the jury were two exemptions to the licensing requirement, former RCW 18.32.030(3) and (10). At trial, the clinic excepted to the negligence per se instruction on the ground that there was no evidence of a failure to comply with former RCW 18.32.030(3) and (10). To the contrary, plaintiff had questioned the clinic's director and had found that she did not know whether the state board of dental examiners had ever approved the clinic as a dental school or college whose students were exempt from licensing requirements under former RCW 18.32.030(3) and (10). Moreover, whether Dr. Freeman received supervision, which was a statutory duty of the clinic's under former RCW 18.32.030(3) and (10), was clearly a factual issue concerning which plaintiff introduced evidence.

---

[34]Since this action was filed before August 1, 1986, the effective date of the tort reform act, this instruction was proper. It is based on the approved form set out in WPI 60.01. *See* 6 Wash. Prac. 433 (3d ed. 1989); Laws of 1986, ch. 305, § 910.

[35]*Herberg v. Swartz*, 89 Wn.2d 916, 922, 578 P.2d 17 (1978); *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 919, 568 P.2d 771 (1977).

[36]*Herberg*, 89 Wn.2d at 922; *Goodell v. ITT-Federal Support Serv., Inc.*, 89 Wn.2d 488, 493, 573 P.2d 1292 (1978).

The clinic now claims that the trial court in instruction 17 improperly asked the jury to determine the legal issue of whether there was a violation of the licensure statute and, if so, to find negligence. This is a new basis for excepting to instruction 17 which we will not consider for the first time on appeal.[37] In any case, this argument overlooks the factual issues raised by former RCW 18.32-.030(3) and (10) and the question of the clinic's compliance therewith.

Instruction 17 allowed the clinic to argue its theory of the case, *i.e.*, that the statute was not violated in any way. Instruction 17 was not misleading, and it properly stated the law. The trial court did not abuse its discretion in giving instruction 17.

The Court of Appeals is reversed, and the trial court's judgment, based on the jury's verdict, is reinstated.

DORE, C.J., and BRACHTENBACH, DURHAM, GUY, and JOHNSON, JJ., concur.

UTTER, J. (dissenting) — Under the doctrine of corporate negligence, a hospital owes a separate, nondelegable duty to a patient. Thus, it may be held liable for a patient's injury in spite of a lack of negligence on the part of the attending physician. In the present case, Providence owed a duty to supervise Dr. Freeman. In order to prevail in an action for corporate negligence against a hospital, a plaintiff must

> prove by a preponderance of the evidence that the defendant . . . failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages . . ..

RCW 4.24.290. *See also Alexander v. Gonser*, 42 Wn. App. 234, 240-41, 711 P.2d 347 (1985), *review denied*, 105

---

[37]*Nelson v. Mueller*, 85 Wn.2d 234, 238, 533 P.2d 383 (1975); *Sulkosky v. Brisebois*, 49 Wn. App. 273, 276, 742 P.2d 193 (1987).

Wn.2d 1017 (1986); *Byerly v. Madsen*, 41 Wn. App. 495, 503, 704 P.2d 1236, *review denied*, 104 Wn.2d 1021 (1985). In the present case, a preponderance of the evidence does not show a breach of duty by Providence which proximately caused plaintiff's injury. Therefore, I dissent.

The jury exonerated Dr. Freeman, but found that Providence breached its duty of supervision, and that this breach proximately caused Douglas' injury. The trial court sustained the verdict. The Court of Appeals reversed, finding there was no evidence, no chain of circumstances, from which a jury could reasonably infer that Providence's negligence (lack of supervision) caused the injury.

> Not one expert testified how Providence could have prevented the injury. The evidence does not establish that the *absence* of a dental assistant, a supervising dentist, or a licensed dentist caused Douglas' injury. It is undisputed that all the expert witnesses agreed that it was Dr. Freeman who actually caused the injury. Thus, there is no evidence that Providence's negligent conduct even contributed to the cause of Douglas' injury.

*Douglas v. Freeman*, 57 Wn. App. 183, 191, 787 P.2d 76 (1990). The court therefore concluded that any evidence relied on by the jury was purely speculation and conjecture. I agree.

In order to support a separate claim for corporate negligence, the plaintiff must independently show negligence on the part of the hospital, *e.g.*, through selection, supervision, or retention of the doctor. *Pedroza v. Bryant*, 101 Wn.2d 226, 677 P.2d 166 (1984). The only testimony which indicates Providence might have been negligent in its supervision is Dr. Freeman's own testimony that he would not perform an extraction without an assistant and plaintiff's testimony that an assistant was not present during the extraction. The majority believes this is sufficient evidence. I disagree.

Dr. Freeman's testimony is not sufficient evidence of the standard of care because he only testified as to his *own* usual practice, not that of the community. In medical

malpractice cases, the standard of care is based on proof of the customary and usual practices within the profession. *Teig v. St. John's Hosp.*, 63 Wn.2d 369, 375, 387 P.2d 527 (1963).

As the majority points out, RCW 18.32.030 sets forth the applicable standard of care and requires Providence to supervise Dr. Freeman. Majority opinion, at 249. However, the statute does not indicate whether the duty to supervise includes the duty to provide an assistant. The majority states it need not decide this issue. It accepts Dr. Freeman's testimony that the presence of an assistant is essential to performing a wisdom tooth extraction. Majority opinion, at 250. As stated above, Dr. Freeman's testimony is not sufficient evidence regarding the standard of care. Furthermore, while he testified that he would not perform wisdom teeth extractions without an assistant, he never stated that the presence of an assistant would prevent lingual nerve damage. The record does not contain sufficient expert testimony to establish that the standard of care requires providing an assistant.

Furthermore, RCW 7.70.040 provides:

> The following shall be *necessary* elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession . . . in the state of Washington, acting in the same or similar circumstances;
> (2) Such failure was a proximate cause of the injury complained of.

(Italics mine.) Providence is a "health care provider" falling within the purposes of the statute. *See* RCW 7.70-.020(3).

Two experts testified the clinic met the standard of care. Dr. Freeman himself testified that Dr. McMullan provided adequate supervision. Thus, there was *no* evidence presented at trial that Providence failed to comply with the applicable standard of care. There was

insufficient testimony that a hospital's standard of care with regard to supervision requires providing an assistant. There was no testimony that the presence of an assistant was essential to preventing lingual nerve damage. There was conflicting testimony as to whether an assistant was present. Finally, all of the experts agreed that Dr. Freeman's negligence was the cause of Douglas' injury. Since the jury found Dr. Freeman was *not* negligent, it must have found an assistant was present, or that the absence of the assistant did not constitute negligence. There is not substantial evidence in the record to support a finding that Providence breached its duty to supervise Dr. Freeman.

The majority states it would be reasonable for the jury to infer that an assistant is required during wisdom teeth extractions, and that the absence of an assistant caused Dr. Freeman to perform the extractions in a manner which injured the plaintiff. Majority opinion, at 253-54. However, the fact the jury exonerated Dr. Freeman indicates that the absence of an assistant, if any, was not the cause of plaintiff's injury. The presence of an assistant has not been shown to be a requirement of the duty to supervise. The alleged failure to provide an assistant has not been established as a breach of duty on the part of Providence, and the plaintiff has failed to prove that Providence's negligence was the proximate cause of her injury.

*Alexander v. Gonser, supra*, involves an action against a hospital for corporate negligence. There, the plaintiff's only evidence of the hospital's negligence was an affidavit of a physician who testified that the hospital failed to adequately supervise plaintiff's attending physician. However, the court concluded the affidavit did not show proximate cause between the failure to supervise and plaintiff's injury. Two other experts testified the hospital complied with the accepted standard of care. The

trial court granted summary judgment in favor of the hospital on the corporate negligence claim and the Court of Appeals affirmed. 42 Wn. App. at 241-42. Likewise, in the present case, two experts testified Providence complied with the accepted standard of care. The testimony upon which plaintiff now relies, her own and that of Dr. Freeman, is based upon mere speculation and conjecture.

No reasonable basis exists to support the verdict against Providence. In a case where medical testimony is required to establish the causal relationship, the evidence will be considered insufficient if it can be said that, considering all the medical testimony presented at trial, the jury must resort to speculation or conjecture in determining the causal relationship. *McLaughlin v. Cooke*, 112 Wn.2d 829, 774 P.2d 1171 (1989). The jury verdict in this case appears to be based on speculation and conjecture and is therefore not sustainable.

I would affirm the Court of Appeals.

DOLLIVER and SMITH, JJ., concur with UTTER, J.

Reconsideration denied October 22, 1991.