# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CHELSEA KRICH and MICHAEL KRICH, )
husband and wife; WILLOW KRICH, a )    No. 76775-5-I
minor child; PAISLEY KRICH, a minor )
child; and TANNER KRICH, a minor child, )    DIVISION ONE
    )
    Appellants, )    UNPUBLISHED OPINION
    )
    v. )
    )
MARY B. WITTMAN, M.D. and JOHN )
DOE WITTMAN, individually and their )
marital community comprised thereof; and )
EASTSIDE OB/GYN, PLLC, a Washington )
Corporation, )
    )
    Respondents. )    FILED: July 16, 2018
    )

APPELWICK, C.J. — Krich appeals from summary judgment dismissing her medical malpractice and lack of consent action against her doctor and the doctor's medical group. She argues that she did not consent to continued labor after she consented to a cesarean section delivery, and that the continued labor caused injury to her daughter. Krich did not provide expert testimony establishing that the continued labor caused temporary or permanent injuries. We affirm.

## FACTS

Chelsea Krich's pregnancy with daughter Willow was complicated by hypertension. Krich signed a consent form indicating that her doctor, Shannon Bailey, recommended inducing labor because of the hypertension. The consent form authorized the doctor to break Krich's water and to use the medications

Oxytocin (Pitocin) and Cervidil. Dr. Mary Wittman assumed care of Krich and induced her labor on June 26, 2014.

In the morning of June 26, Krich was put on Pitocin, and later that morning Dr. Wittman ruptured Krich's membranes as part of the inducement process. Around 1:00 p.m. that day, there was an abrupt drop in the baby's heart rate. The baby's heart rate had recovered, but Dr. Wittman inserted an intrauterine pressure catheter to put extra fluid around the baby, in an attempt to prevent future drops in heart rate. Dr. Wittman raised the potential need for a cesarean section (C-section) with Krich. Krich signed a consent form for a C-section. Dr. Wittman allowed the induced labor to proceed.

Around 10:00 p.m. the baby's heart rate dropped again, and Dr. Wittman recommended amnio infusion and to prepare for a C-section. Dr. Wittman was unable to find the baby's "heart tones," and called a "crash C-section." The baby, Willow, was admitted at Swedish Medical Center six days later due to neurological complications.

In a suit against Wittman and Eastside OB/GYN PLLC (hereafter collectively referred to as Wittman), Krich alleged that the continued labor was without her consent. She further alleged that Willow suffered severe and permanent injuries because of the continued labor. Wittman moved for summary judgment. She argued that Krich did not produce expert testimony establishing that a breach of the doctor's standard of care caused the alleged injuries. Asserting that Krich

could not establish this link, Wittman also argued that her informed consent claim failed.

The trial court granted Wittman's motion for summary judgment. It found on Krich's medical malpractice claim,

> There is no witness who is expert in this case who is willing to testify that Dr. Wittman fell below the standard of care. And more importantly, there is no medical witness at all, including Dr. Wittman herself, that her standard of care violation more likely than not cause the damage to the plaintiff.

On the informed consent claim, the trial court found,

> [I]t seems to be an argument that informed consent had been withdrawn and nonetheless that the labor continued, the question is whether or not that treatment, the continued labor, again, as opposed to what the plaintiff -- patient consented to, proximately caused injury to her. And here again, I have a complete gap in the testimony.

> Yes, there is testimony from Dr. Wittman, and it's pretty categorical, that there was a placental abruption here that she saw signs of at the time of the emergency C-section, but when did it happen and is that the cause of any of the plaintiffs' damage? Certainly, there's no evidence at all that it's cause of permanent injury here because there's a real absence of even clear evidence here of permanent injury such as cerebral palsy. All three doctors have opined otherwise.

> But also, there's a complete absence of testimony from Dr. Wittman or anybody else that the labor that continued until the emergency C-section caused the temporary injuries either.

The court denied Krich's motion for reconsideration. Krich appeals.

## DISCUSSION

Krich's sole argument on appeal is that she received treatment to which she did not consent, and that this treatment proximately caused injury.

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

Krich contends that she did not consent to continued labor. She argues that the continued labor caused three types of harm: (1) her emotional distress, (2) her husband's bystander emotional distress, and (3) injuries to Willow, resulting in medical bills around $160,000.

The relevant statute provides,

No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:

(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

(2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur;

(3) That injury resulted from health care to which the patient or his or her representative did not consent.

Unless otherwise provided in this chapter, the plaintiff shall have the burden of proving each fact essential to an award by a preponderance of the evidence.

RCW 7.70.030.

Under the statute, not only must Krich establish that she did not consent to the treatment she received, but also that injury resulted from that treatment. RCW 7.70.030(3). In general, expert testimony is required when an essential element

in the case is best established by an opinion which is beyond the expertise of a layperson. Harris v. Robert C. Groth, M.D., Inc., 99 Wn.2d 438, 449, 663 P.2d 113 (1983). Medical facts in particular must be proven by expert testimony unless they are observable by a layperson's senses and describable without medical training. Id. Expert testimony is generally necessary to establish most aspects of causation. Id.

Krich asserts that she did not consent to the continued labor, and differentiates this claim from a claim of lack of informed consent. Krich relies on Bundrick v. Stewart, 128 Wn. App. 11, 114 P.3d 1204 (2005).

In Bundrick, this court explained that an action for total lack of consent is a claim of battery, while a claim for lack of informed consent is a medical malpractice action of negligence. Id. at 17. Informed consent protects the patient's right to know the risks of the decisions she makes about her care, whereas the cause of action for battery protects an individual's right to privacy and bodily integrity. Id. Battery is an intentional tort, and the plaintiff's burden is to show that the defendant intended to and caused either harm or offense. Id. at 18. The burden ordinarily requires the plaintiff to show that she did not consent. Id. And, when she consented to a surgical procedure, but contends she limited her consent to certain participants, she must demonstrate she communicated that limitation. Id.

Here, Krich argues that the consent form she signed early in the afternoon establishes that she sought a C-section at that time, and therefore did not consent

to the continued labor that caused injury.[1] The consent form she signed states, in part,

> I recognize that, during the course of the operation, post-operative care, medical treatment, anesthesia or other procedure, unforeseen conditions may necessitate additional or different procedures than those set forth above. I therefore authorize my above-named physician, and his or her assistants or designees, to perform such surgical or other procedures as are in the exercise of their professional judgment necessary and desirable. The authority granted under this paragraph shall extend to the treatment of all conditions that require treatment and are not known to my physician at the time the medical or surgical procedure is commenced.

The consent form does not dictate a time for the C-section delivery. But, Krich's deposition testimony does,

> Q. So when she left, you understood from her perspective that you weren't going to have the C-section at that point?

> A. Yes, I -- we stopped her. I stopped her at the door saying, "I don't want to continue on with labor. I want to have a C-section. I want to have a C-section now."

In the light most favorable to Krich, Krich communicated that she no longer consented to the continued labor. But, even if Krich did not consent to the continued labor, statutorily she must prove that the continued labor caused injury. See RCW 7.70.030(3). A plaintiff who seeks recovery for injuries resulting from medical treatment must, except under unusual circumstances, offer expert testimony to establish the essential elements of her claim. See Groth, 99 Wn.2d at 449.

---

[1] Krich does not cite to any case law to support her assertion that a doctor not performing a type of procedure immediately is a medical battery.

In Krich's motion for reconsideration, she conceded that "no expert testified directly that [a] C-section earlier in the day would have avoided the neurologic depression that put Willow in the NICU [(neonatal intensive care unit)] for the weeks following her birth." Krich also stated,

> Indeed, though the treating neonatologist Dr. Menezes declined to connect Willow's current problems to the events of her birth, his note and deposition testimony seem to unambiguously support that fetal distress "20-30 minutes prior to delivery" were the direct cause of the "cooling protocol" that was initiated.
>
> Plaintiff's expert Dr. Lin likewise declined to connect Willow's current issues with the events of her birth, but he gave no testimony on whether earlier C-section would, or would not have prevented the "cooling protocol", defense counsel being (quite understandably) more concerned with Dr. Lin's opinions on Willow's long-term problems.

After acknowledging the lack of expert testimony, Krich asked the trial court to reconsider summary judgment, arguing that "a jury could reasonably infer" from the evidence that an earlier C-section would have avoided injury. Krich relied on Douglas v. Freeman, 117 Wn.2d 242, 814 P.2d 1160 (1991). There, the Court recognized,

> Expert testimony usually is required to establish proximate cause in medical malpractice cases. It is not always necessary, however, to prove every element of causation by medical testimony. If, from the facts and circumstances and the medical testimony given, a reasonable person can infer that the causal connection exists, the evidence is sufficient.

Id. at 252 (footnotes omitted).

Douglas is distinguishable from this case. In Douglas, the plaintiff charged her doctor with negligence in extracting her teeth, and the clinic with negligence in supervising him. Id. at 253. The doctor who performed the plaintiff's procedure

7

stated that wisdom tooth extractions require an assistant. Id. at 253-54. And, two expert witnesses testified that the lingual nerve could be damaged at stages where the doctor stated he required an assistant. Id. at 254. Our Supreme Court held that a jury could reasonably infer from the evidence that the assistant's absence and the clinic's negligence in supervising the doctor proximately caused the plaintiff's injuries. Id. at 254-55.

Here, in Krich's motion for reconsideration, she pointed to Dr. Wittman's statement,

> "You know, in the earlier part of the day, she had the deceleration, the baby recovered, the baby did well, the baby was having accelerations and good variability, and then, at the end, the baby just wasn't tolerating labor at all, which is why we did the urgent C-section, crash C-section."

Krich argues that had a C-section been performed when the baby recovered, the injuries would have been avoided. Unlike Douglas, Krich did not provide any expert testimony from which a jury could reasonably infer that allowing the labor to continue from the early interventions until the C-section proximately caused injury. And, the statements the experts made declined to connect the injuries to the birth. The temporal inference that the injuries occurred before the C-section is not sufficient standing alone to allow the jury to infer any injury occurred after consent to the C-Section. The jury would have had to speculate about what caused any injuries and when they were caused.

We find that the trial court did not err in concluding that Krich did not present evidence that the continued labor caused injury. The summary judgment was properly granted.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Trickey, J_       _Becker, J._