IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID and PENNY PITTMAN, Personal Representatives of the ESTATE OF JAYNE ALAZNE PITTMAN; and DAVID PITTMAN and PENNY PITTMAN, Individually and as Parents of JAYNE ALAZNE PITTMAN, | ) ) ) ) ) ) ) | No. 38054-8-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| VIRGINA MASON HEALTH SYSTEM, a Washington corporation, doing business as VIRGINIA MASON MEMORIAL; and MARK LIVINGSTON, M.D., | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| YAKIMA VALLEY MEMORIAL HOSPITAL ASSOCIATION, | ) ) ) ) | |
| Respondent. | ) | |

PENNELL, J. — David and Penny Pittman appeal the summary judgment dismissal

of their claims against Yakima Valley Memorial Hospital Association (YVM) for medical

No. 38054-8-III
*Pittman v. Virginia Mason Health Sys.*

negligence arising out of the death of their two-year-old daughter, Jayne Alazne Pittman.

We reverse and remand for further proceedings.

FACTS

Jayne Alazne Pittman[1], daughter of Penny and David Pittman, was a two-year-old

girl who suffered from cystic fibrosis and chronic pseudomonas. In May 2015, Jayne

began experiencing intermittent moderate abdominal pain. On May 26, 2015, Ms. Pittman

brought Jayne to the emergency room at YVM where a doctor ordered x-rays with two

views of Jayne's abdomen. After reviewing the films himself, the doctor diagnosed Jayne

with constipation, prescribed a laxative, and sent the child home with her mother.

About a week later on June 3, Jayne's parents again brought Jayne to YVM, this

time because of abdominal pain, abdominal distension, abdominal cramping, vomiting,

and diarrhea. The Pittmans arrived at the hospital at close to midnight. The attending

emergency room physician, Mark Livingston, M.D., conducted a physical examination

of Jayne and ordered an x-ray. Dr. Livingston interpreted the x-ray and determined Jayne

had "[d]ilated loops of bowel filled with stool and gas, similar to [the] x-ray performed

[on] May 26. Clerk's Papers (CP) at 307. Dr. Livingston diagnosed Jayne with "acute

vomiting likely viral syndrome" and prescribed an anti-nausea medication. *Id.*

---

[1] For clarity and readability, Jayne will be referred to by her first name.

2

Dr. Livingston discussed his interpretation of the x-ray and his diagnosis with Jayne's parents, and the Pittmans returned home early the next morning around 1:30 a.m. According to the autopsy report, Jayne and Ms. Pittman fell asleep around 2:30 a.m., with Jayne falling asleep on her mother's chest. When Ms. Pittman awoke about 6:00 a.m., Jayne was no longer breathing and unresponsive.

Later that morning, Joseph Gouveia, M.D., a radiologist with staff privileges at YVM, reviewed Jayne's x-ray from the night before, unaware that Jayne had since died. In his written report, Dr. Gouveia described "rather notable obstipation," bowel distension, and "a small amount of bowel dilation." *Id*. at 310. This interpretation was very similar to that of Dr. Livingston.

A subsequent autopsy performed by forensic pathologist Jeffrey Reynolds, M.D., identified the cause of Jayne's death as "[s]evere malabsorption syndrome secondary to cystic fibrosis" and concluded the mechanism of death was "[a]cute cardiac pump failure secondary to right heart air embolism." *Id*. at 442. In addition, Dr. Reynolds indicated that Jayne had suffered "torsion of the omentum," leading to "avascular necrosis of [a] considerable portion of [the] small bowel." *Id*. at 445. Jayne's necrotic small bowel was found to be grossly dilated, extending from the mid-jejunum to the mid-ileum area. The compromised, distended, and air-filled bowel was the source of the "[d]issection of gas

into the submucosal venous and lymphatic system" with eventual venous air embolus to [the] right heart," due to the omentum torsion, leading to "acute cardiac pump failure." *Id*. at 315, 442. Put simply, due to Jayne's severe bowel condition, air was able to escape from her bowels and eventually reach her heart, causing an air embolism in the right portion of the heart.

The Pittmans sued YVM and Dr. Livingston for medical negligence. The case proceeded through discovery and the claims against Dr. Livingston were resolved. YVM then moved for summary judgment on the remaining claims and the parties presented competing expert witness opinion testimony regarding whether a violation of the standard of care by YVM contributed to Jayne's death.

YVM retained Daniel von Allmen, M.D., a professor of surgery at the University of Cincinnati College of Medicine and surgeon-in-chief of Cincinnati Children's Hospital Medical Center. Dr. von Allmen, who is board certified as a medical examiner, surgeon, pediatric surgeon and advanced trauma life support provider, opined that at the time Jayne arrived at YVM on June 3, segments of her bowel "were essentially dead." *Id*. at 268. According to Dr. von Allmen, "while emergency resection surgery could have potentially revived some of the bowel, the extent of damage was likely too great, and combined with [Jayne's] additional extensive health complications, her chance of having survived the

surgery would have been slim." *Id*. Dr. von Allmen was also of the opinion that it would have been necessary to transfer Jayne to a more advanced care facility, such as Seattle Children's Hospital, to receive the necessary surgery, with the transit time involved in moving Jayne between the two facilities further decreasing her chances of survival. It was Dr. von Allmen opinion that there was nothing YVM could have done on June 3 to prevent Jayne's death.

The Livingstons countered with expert witnesses Gary Stimac, Ph.D., M.D., and Richard Cummins, M.D.

Dr. Stimac is a physician and board certified radiologist, with specialized training in neuroradiology. He reviewed Jayne's x-rays from May 26 and June 3 and concluded they showed significant abnormalities, particularly when comparing the later x-ray to the earlier films. According to Dr. Stimac, the films showed serious bowel complications, consistent with Jayne's diagnosis of cystic fibrosis. Dr. Stimac explained that those findings from the x-rays suggested a need for emergent medical or surgical attention. He opined that Dr. Gouveia's interpretation, after Jayne's death, of the June 3 x-ray was inadequate and also fell below the standard of care.

Dr. Cummins is a physician who is board certified in both internal medicine and emergency medicine. He is a professor of medicine at the University of Washington

and has been an attending physician at the University of Washington Medical Center since 1982. Dr. Cummins opined that the standard of care in the state of Washington is to have a radiologist review an x-ray prior to discharging a patient. Dr. Cummins explained YVM breached this standard of care when Jayne's x-rays were reviewed only by the attending physician. According to Dr. Cummins, a competent radiologist would have recognized the severity of Jayne's condition. This would have led to remedial steps such as rehydration, monitoring, and transfer for surgery. Dr. Cummins opined, on a more likely than not basis, that Jayne would have survived if she had been timely diagnosed and treated.

Dr. Cummins based his standard of care conclusion on his training, practice, and teaching of emergency medicine, on statements and guidelines published by the American College of Emergency Physicians and the American College of Radiology, hospital certification requirements, and his knowledge of the reasonably prudent practice of emergency medicine in emergency departments. He based his opinions regarding Jayne's condition and the survivability of that condition on his professional training, clinical experience, and knowledge of her condition obtained from a review of the treatment records and x-rays, and the autopsy report findings. Although Dr. Cummins is not a surgeon or pediatric specialist, he testified he has emergency room experience

with adult patients presenting with ischemic bowel syndromes similar to that suffered by Jayne.

The trial court ultimately granted YVM's motion for summary judgment, concluding the Pittmans had not raised a genuine issue of material fact regarding whether YVM's alleged negligence caused Jayne's death. The Pittmans timely appeal.

ANALYSIS

A plaintiff in a medical malpractice action must prove two key elements, that the defendant health care provider: (1) breached their duty to exercise the standard of care of a reasonably prudent health care provider in the same profession, and (2) that failure was the proximate cause of the plaintiff's injuries. *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231, 393 P.3d 776 (2017); former RCW 7.70.040 (2011). Expert witness testimony is generally necessary to satisfy both elements. *Frausto*, 188 Wn.2d at 231-32. A defendant health care provider can obtain summary judgment dismissal of a medical negligence claim by demonstrating the plaintiff lacks evidence of breach and proximate cause. *Behr v. Anderson*, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021), *review denied*, 198 Wn.2d 1040, 502 P.3d 864 (2022). We review de novo a trial court's dismissal of a claim on summary judgment. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371 (2020).

YVH challenges the Pittmans' ability to prove both breach of the standard of care and causation. We address each element in turn.

*Standard of care*

The Pittmans have produced ample evidence to overcome summary judgment on their breach of standard of care claim. Dr. Cummins has opined that the standard of care in Washington is to have a radiologist review and interpret any x-rays ordered of a patient in the emergency room prior to discharging that patient. YVM challenges Dr. Cummins's opinion by claiming he lacks sufficient expertise to testify as to the standard of care for emergency room administration. We disagree. A physician can testify regarding the standard of care applicable to a corporate health care provider. *Douglas v. Freeman*, 117 Wn.2d 242, 250, 814 P.2d 1160 (1991) (defendant doctor supplied sufficient evidence of breach of corporate duty). Dr. Cummins has extensive emergency room experience in Washington. He was competent to testify as to the standard of care.

YVM also argues that Dr. Cummins's position is incorrect on the standard of care in Washington. This disagreement goes to the weight of Dr. Cummins's opinion, not its admissibility. The issue of whether YVM breached the standard of care by not having a policy directing that a radiologist review and interpret x-rays ordered in the emergency room prior to patient discharge is a question of fact that must be resolved by a jury.

*Causation*

While a closer call, the Pittmans have also produced sufficient evidence to overcome summary judgment on their causation claim. Although Dr. von Allmen opined that Jayne would have had very little chance of survival even if she had been referred for surgery when she presented to YVM on June 3, Dr. Cummins disagreed with this assessment. Like Dr. von Allmen, Dr. Cummins reviewed the autopsy report and Jayne's treatment records. He opined, to a medical degree of certainty, that had Jayne been provided timely interventions she would have survived.

YVM claims Dr. Cummins is not qualified to offer an opinion on Jayne's chances of survival because Dr. Cummins does not specialize in either pediatric medicine or surgery. But this is not the standard set by our case law. In litigation in Washington, a physician with a medical degree "'is qualified to express an opinion on any sort of medical question, including questions in areas in which the physician is not a specialist, so long as the physician has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue.'" *Leaverton v. Cascade Surgical Partners PLLC*, 160 Wn. App. 512, 517, 248 P.3d 136 (2011) (quoting *Hill v. Sacred Heart Medical Ctr.*, 143 Wn. App. 438, 447, 177 P.3d 1152 (2008)).

Dr. Cummins has extensive emergency room expertise. He testified to familiarity with patients presenting with urgent bowel issues similar to Jayne's. While Dr. Cummins may not have been involved in performing surgery, a jury could infer that, based on his experience, he developed familiarity with whether his patients stood a chance of surviving surgery. This was sufficient to deny summary judgment. In addition, although Dr. Cummins does not have specialized experience working with children, there are no facts in the record on review suggesting children's chances of surviving surgery differ significantly from those of adults.

*Remaining issues*

For the first time, YVM argues on appeal that it is entitled to summary judgment because corporate negligence cannot be based on a hospital's failure to adopt policies and procedures. We recognize that we "may affirm summary judgment on any grounds supported by the record." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011). But given this argument was not raised in superior court, the record on this issue has not been sufficiently developed and we decline to address it for the first time on appeal. *See* RAP 2.5(a).

No. 38054-8-III
*Pittman v. Virginia Mason Health Sys.*

CONCLUSION

The order granting YVM's motion for summary judgment is reversed.

This matter is remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant

to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

11